**COMMERCIAL IRON & METAL CO.,**
**Plaintiff-Appellee,**

v.

**BACHE HALSEY STUART, INC., and**
**Irving J. Louis, Jr.,**
**Defendants-Appellants.**

**No. 76–2171.**

United States Court of Appeals,
Tenth Circuit.

Argued May 9, 1978.

Decided Aug. 7, 1978.

Rehearing Denied Sept. 18, 1978.

---

George H. Colin, Baer, Marks & Upham, New York City (Dawson, Nagel, Sherman & Howard, Denver, Colo., with him on brief), for defendants-appellants.

David G. Palmer, Holland & Hart, Denver, Colo. (James C. Bull, Quiat, Bucholtz & Bull, Denver, Colo., with him on brief), for plaintiff-appellee.

Before BARRETT and McKAY, Circuit Judges, and BRATTON, District Judge.

BRATTON, District Judge.

This is an appeal from a jury verdict in favor of plaintiff-appellee Commercial Iron & Metal Company [hereinafter Commercial] and against the individual defendant Irving Louis, Jr. [hereinafter Louis], and the defendant Bache Halsey Stuart, Incorporated [hereinafter Bache], on its counterclaim for damages. The parties were previously before this Court upon an appeal from a summary judgment entered in favor of the defendants, and that judgment was reversed. *Commercial Iron & Metal Co. v. Bache & Co., Inc. et al.*, 478 F.2d 39 (10th Cir. 1973). See that opinion for a full explication of the previous course of the litigation.

Appellee brought the suit for damages and to rescind contracts it had entered into with Bache for the purchase of copper metal. It predicated its claim upon violations of the federal securities laws and the securities laws of Colorado and New York, together with allegations of negligence and fraud and misrepresentation that induced it to enter into the contracts. The defendants denied the plaintiff's claims, and Bache counterclaimed for the amount lost by it upon plaintiff's repudiation of its contracts.

At the close of plaintiff's evidence at trial, defendants unsuccessfully moved for a directed verdict, but the court did dismiss plaintiff's negligence and securities claims. Only plaintiff's prayer for rescission for fraud and misrepresentation and Bache's counterclaim for damages went to the jury. Upon instructions pertaining to these claims the jury reached its verdict for plaintiff. Defendants' motions to set aside the verdict and for judgment n. o. v. were denied, and the present appeal followed.

The evidence at trial reflected that the plaintiff partnership was run by one Morey Duman [hereinafter Duman], who managed it and made all the business decisions. Duman had a commodity futures account with Merrill Lynch, Fenner and Smith and, from time to time, bought futures through one of their brokers. Plaintiff's evidence was that, in May of 1969, Duman was contacted by defendant Louis at the suggestion of a mutual acquaintance. Louis, who was in the Bache Metal Department, told Duman in a telephone call from New York that he would like to obtain Duman's business. In a series of subsequent calls, Louis held himself out to be an expert in copper trading with international connections from which he could obtain information with respect to copper trading so that Duman would make a great deal of money by dealing with him. He assured Duman that he would carefully manage and supervise Duman's account. Duman claimed that in reliance upon these representations he was ultimately persuaded that his account at Merrill Lynch should be transferred to Bache. This was accomplished between the two companies by an "exchange for physical," a procedure involving a futures transaction in which Bache, through Louis, acted as a broker and a physical transaction in which it acted as the principal.

Duman claimed that there was no discussion between him and Louis about how the account was to be transferred and that he thought Bache was replacing Merrill Lynch only as his broker in all transactions thereafter.

Over the next few months Louis telephoned Duman frequently from New York and recommended various copper transactions, and in reliance thereon Duman ultimately became heavily involved in copper speculation, including contracts in physical copper which required no original margin deposits and no maintenance margins in the event of a market decline. At one point Duman asked Louis about the consequences of a lower price at the delivery date than that of the purchase date, and Louis told him that the delivery date could be "rolled forward" to a later month. What Louis did not tell him, Duman claimed, was that this would require payment of the difference between the original purchase price and the market price at the time of the "roll-over." At all times, Duman claimed, Louis assured him that the market was going to go up and once said that he would even reduce his commission per ton on the copper. Each telephone purchase was reflected by a confirmation, sent to and signed by Duman, which stated that Bache was the seller and appellee was the buyer. Each such "purchase contract" also provided for arbitration.

In 1970 the price of copper dropped drastically, and Duman became concerned about the contract with a December delivery date. In mid-September, he telephoned Louis and suggested that such contract be rolled forward to a later date. It was then, Duman said, that Louis told him such a procedure would entail payment by him of the difference between the current price and the much higher original purchase price. It was during this conversation that Duman claimed to have discovered that Louis was not acting as his broker in these transactions but that in fact Bache was a principal in them.

On December 8, 1970, Duman repudiated all fifteen of the contracts involved in the present action, and Bache ultimately lost approximately one-half million dollars on them. The present action followed, with Commercial seeking damages or rescission and Bache seeking to recoup its losses.

The first contention advanced is that, upon dismissal of Commercial's state and federal securities claims, our prior opinion in the action mandated staying the trial and directing arbitration pursuant to the contracts' arbitration clauses. Whatever its merit might be under other circumstances, this assertion has none here. The record reflects that Bache at no time during the entire trial raised this issue. It is not enough that it had in 1971 unsuccessfully petitioned federal courts in Colorado and the Southern District of New York for orders to compel arbitration or that it had plead the right to arbitration as an affirmative defense. Neither does its attempt to achieve arbitration some four months before trial by motion to the judge who presided at trial lend any support to its position. The plain facts are that it went to trial, and at no time during or at the conclusion of trial did it mention arbitration. It was the duty of Bache to bring the matter up, and its failure to do so can only be characterized as an attempt to invite error. In short, Bache, by its silence throughout trial on its claim of the right to arbitration, never afforded the trial judge the opportunity to consider whether it became at some point therein entitled to have the matter submitted to arbitration. Arbitration may be waived by the conduct of the demanding party, *Gutor International AG v. Raymond Packer Co., Inc.*, 493 F.2d 938 (1st Cir. 1974); and Bache's silence throughout trial is conduct that justifies the conclusion that it waived its right to arbitration.

Appellants next assert that it was error to accord Commercial a jury trial on what they claim was essentially an equitable claim for relief. Before trial the appellants moved for a bifurcation of the case into an equitable action and a legal action, and their motion was denied. It is conceded that Bache's counterclaim was a claim at law triable to a jury, but jury trial on the counterclaim was not demanded. Obviously, appellee could have demanded a jury trial on the counterclaim. *Fed.R.Civ.P. 38(b)*. Commercial initially stated legal claims and demanded damages. However,

even if it were assumed that its claims were purely equitable, its claims for relief and its defense against the counterclaim were factually identical, so that bifurcation into an equitable action and a legal action would be undesirable, duplicitous and virtually impossible, and could well have deprived Commercial of its right to a full jury trial on Bache's counterclaim. *See Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

■ Three days before trial, Bache requested that the parties be realigned, that it be designated as plaintiff, and that it be allowed to open and close to the jury. The denial of its request is also assigned as error. The determination of the right to open and close a case rests largely in the sound discretion of the trial court, and the trial court's ruling thereon may not be the basis of an assignment of error. *Lancaster v. Collins*, 115 U.S. 222, 6 S.Ct. 33, 29 L.Ed. 373 (1885); *United States v. Savannah Shipyards, Inc.*, 139 F.2d 953 (5th Cir. 1944); *see Giffin v. Ensign*, 234 F.2d 307 (3rd Cir. 1956).

■ Numerous complaints are lodged against the instructions to the jury, beginning with the court's references to Commercial's claims that Louis solicited an "account" and said he would carefully supervise Commercial's "account," and that Bache and Louis failed to disclose that they were acting both as "brokers" or "agents" and principals. These instructions are claimed by appellants to have conveyed to the jury the erroneous impression that Bache stood in the relationship of broker to Commercial with all the different and greater responsibilities borne by a broker. The instructions properly and accurately stated Commercial's claims that material misrepresentations and omissions occurred and that plaintiff justifiably relied thereon, and the evidence at trial supports such instructions.

■ The claimed error in the instructions defining a confidential relationship is equally without merit. After delimiting the duty of disclosure imposed in his dealings with another upon a person in a confidential relationship to the other person, the court instructed the jury that a confidential relationship existed whenever one person, by acting or purporting to act for another, gained the trust and confidence of the other and was thereby in a position to exercise influence and dominion over the other. These instructions correctly stated the applicable law, and were not, as is here urged by Bache, tantamount to instructions that there existed a fiduciary relationship.

■ Next, there is the assertion that the trial court erred in refusing to apply the law of New York as called for in the contracts. The court properly instructed in accordance with Colorado law on the issue of fraud and misrepresentation. It is not necessary to discuss further appellants' objections to instructions. The instructions met the test of sufficiency, for, taken as a whole, they adequately and sufficiently advised the jury of the parties' respective contentions and the law applicable thereto. *United States v. Westbo*, 516 F.2d 285 (10th Cir. 1978).

In addition to its claim of improper instructions, Bache also contends that the form of the verdict was prejudicial to it in that it set forth in exact figures the undisputed and substantial amount that would be due Bache should it prevail on its counterclaim against Commercial. Dispositive *vel non* of this issue is the failure of counsel to make any such objection below.

■ Bache claims that it was error not to grant its motion to strike Commercial's proof relating to the "roll-over" or to allow Bache to rebut it. It is sufficient to state that the court below correctly ruled that the "roll-over" was not a separate claim but was part of the evidence relating to Commercial's claim of fraud and misrepresentation, so that it did not have to be plead in the complaint and no proof that it was absent from the complaint could be presented to the jury. The record reflects no ruling that it could not be rebutted.

Finally, appellants charge that the verdict was contrary to the evidence and that their motions for a directed verdict and judgment n. o. v. should have been granted. This argument is nothing more than an attempt to substitute their view of the evidence for what the record actually reflects. The evidence was conflicting, and the proof was not so overwhelmingly in favor of appellants as to permit a directed verdict. *Kiner v. Northcutt*, 424 F.2d 222 (10th Cir. 1970). It is the jury's function to judge the credibility of witnesses and weigh conflicting evidence. *Loew's, Inc. v. Cinema Amusements*, 210 F.2d 86 (10th Cir. 1954), *cert. denied*, 347 U.S. 976, 74 S.Ct. 787, 98 L.Ed. 115 (1955). There was sufficient evidence to support the verdict, and, accordingly, this Court will decline to substitute its judgment for that of the jury at the trial below.

AFFIRMED.