**Lance ROTHSTEIN, Plaintiff,**

v.

**CIVIL SERVICE COMMISSION OF the CITY OF NEW YORK and the Police Department of the City of New York, Defendants.**

**No. 79 Civ. 4344.**

United States District Court,
S. D. New York.

Sept. 8, 1980.

William Goffen, New York City, for plaintiff.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants; Steven M. Goldberg, New York City, of counsel.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

Plaintiff, formerly employed as an Assistant Architect by the City of New York Police Department ("the police department"), commenced this suit pursuant to 42 U.S.C. § 1983, claiming that his due process rights were violated when he was dismissed from the police department by order of then Police Commissioner Codd on March 2, 1977. Plaintiff seeks reinstatement, back pay and annulment of the order of dismissal. Defendants, the Police Department and the Civil Service Commission of the City of New York ("the Civil Service Commission") move to dismiss on the grounds of res judicata, collateral estoppel, and failure to state a claim upon which relief may be granted. Since matters outside the pleadings, namely the administrative and state court records, must be considered on a motion of this kind, the motion *sub judice* will be treated as one for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons set forth below, defendants' motion is granted.

## STATEMENT OF FACTS

On January 6, 1977, the police department brought disciplinary charges against the plaintiff and suspended him from the department for a second time within a year. After several adjournments, a disciplinary hearing on these charges was held on February 10, 1977. Plaintiff failed to appear and the hearing took place in his absence. After evaluating the oral testimony and the exhibits introduced at the hearing, the hearing officer concluded that the charges were sustained by a preponderance of the credible evidence and recommended that the plaintiff be dismissed from the department. In accordance with this recommendation, Police Commissioner Codd dismissed

the plaintiff on March 2, 1977. Although plaintiff alleges that he did not receive written notice of the police commissioner's decision until January 16, 1978 (complaint ¶ 10), he wrote to the chairman of the Civil Service Commission on March 9, 1977 enclosing a number of exhibits and requesting the following relief:

(1) [t]hat the action of the Police Dept. in twice summarily suspending [his] services . . . be declared arbitrary, capricious, unreasonable, illegal and improper; in violation of the Civil Service Law

\* \* \* \* \* \*

[and] (3) [that the Civil Service Commission] review, vacate, and annul said suspension/dismissal; and to pay [him] the salary [he] would have earned . . . were [he] not improperly removed from [his] position, pursuant to Section 77 of the Civil Service Law.

(Plaintiff's Exh. 3). Plaintiff renewed his demands by letter dated May 25, 1977. On approximately May 1, 1978, the Civil Service Commission, apparently construing plaintiff's letters as an appeal pursuant to section 76(1) of New York's Civil Service Law,[1] affirmed the police department's decision.[2] By letter dated May 5, 1978, Nicholas LaPorte, Jr., the Secretary of the Civil Service Commission wrote to the plaintiff to inform him that "[a]fter a careful review of the testimony adduced at the [police] departmental hearing and based on the record in this case, the NYC Civil Service Commission finds no reversible error and affirms the penalty and decision imposed by the NYC Police Department." (Plaintiff's Exh. 4).

On April 14, 1978, while plaintiff's appeal to the Civil Service Commission was pending, plaintiff commenced an Article 78 proceeding in the Supreme Court, New York County. The petition filed in that proceeding, which did not directly seek review of the Civil Service Commissioner's decision,[3] contained two separate causes of action. The first alleged that the procedures that the police department used at plaintiff's disciplinary hearing did not comply with sections 75 and 76 of New York's Civil Service Law because, *inter alia*, Rothstein allegedly received neither a transcript of the disciplinary hearing nor timely written notice of the police department's decision. The second cause of action alleged that the same trial procedures also "violated petitioner's right to due process guaranteed by the 14th Amendment of the United States Constitution." (Petition at 16). Police Commissioner McGuire, the sole respondent in that proceeding, moved to dismiss the petition. In a decision dated July 11, 1978, the Hon. Nathaniel T. Helman ruled that "under Civil Service Law 76(1) the petitioner's election to seek review by the Civil Service Commission rather than by the Court foreclosed [a state judicial] proceeding absent a showing of arbitrariness on the part of respondent."[4] (Defendants' Exh. A, *citation omitted*). Implicitly finding no such arbitrariness on the part of the respondent, Justice Helman dismissed the petition. (*Id.*) The Appellate Division, First Department, unanimously affirmed without opinion, and on July 9, 1979, the Court of Appeals denied leave to appeal. Plaintiff commenced this § 1983 action shortly thereafter.

---

**1.** This section provides in pertinent part as follows:

(1) Appeals. Any officer or employee believing himself aggrieved by a penalty or punishment or . . . dismissal from the service, or suspension without pay, . . . may appeal from such determination either by an application to the state or municipal commission having jurisdiction, or by an application to the court in accordance with the provisions of article seventy-eight of the civil practice law and rules.

**2.** Although it is unclear from the complaint whether or not a hearing was held before the Civil Service Commission, the decision of the State Supreme Court indicates that the Commission "held a hearing which the petitioner chose not to attend." (Defendants' Exh. A).

**3.** *See* Defendants' Exh. A.

**4.** This provision states that "the decision of such civil service commission shall be final and conclusive and not subject to further review in any court."

## DISCUSSION

The traditional formulation of the res judicata doctrine is that "a valid, final judgment, rendered on the merits constitutes a bar to a subsequent action between the same parties, or those in privity with them, . . . both as to issues actually litigated and determined in the first suit, and as to those grounds which might have been, but were not actually raised and decided in that action." *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968). Were this action to be measured against this standard alone, there would be little question that it would be barred by the plaintiff's previous state court litigation. First, the instant § 1983 complaint alleges the identical due process cause of action that furnished the basis for the state court proceeding. Point II of Rothstein's Article 78 petition alleged that the police commissioner's "trial procedures violated plaintiff's right to due process guaranteed by the 14th Amendment to the United States Constitution" (Petition at 16). After quoting extensively from *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), and reviewing the facts surrounding his dismissal from the police department, plaintiff reasoned that "[he] was not afforded 'notice and opportunity for a hearing appropriate to the nature of the case' as required under the authority of the above cited cases." (Petition at 6–7). *See generally Ornstein v. Regan*, 574 F.2d 115 (2d Cir. 1978); *Newman v. Board of Education*, 508 F.2d 277, 278 (2d Cir.), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975) ("allegation, elaborations, or citations of authority" are sufficient to raise claim for res judicata purposes). Among the specific trial procedures discussed were plaintiff's alleged failure to receive written notice of either the February 10, 1977 hearing or the hearing before the Civil Service Commission and his alleged failure to receive a transcript from the February 10th hearing. The identical claim is alleged in the plaintiff's 1983 complaint:

> The holding of the hearing in abstentia served to deprive the plaintiff without due process of law of his statutory right, to a hearing pursuant to the Civil Service Law of the State of New York, Section 75(2). Although plaintiff had a statutory right to transcripts of the minutes of both disciplinary hearings, his requests for such transcripts were denied constituting [a] further deprivation of due process rights.

(Complaint ¶ 19). Second, the parties to this action bear the requisite degree of identity to the parties before the state court for the res judicata doctrine to apply since the party against whom the estoppel is sought was a party to the state court action. As the Second Circuit summarized in *Shore v. Parklane Hosiery Co.*, 565 F.2d 815, 818–19 (2d Cir. 1977) *aff'd* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979),

> this court in *Zdanok v. Glidden Co.*, 327 F.2d 944 (2d Cir. 1964), following the lead of Justice Traynor in *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892 (1942), dispensed with mutuality as a requirement, taking the view that a requirement of complete identity of parties serves no purpose as long as the person against whom the findings are asserted or his privy has had a full and fair opportunity to litigate the identical issue in the prior action. Any lingering doubt in the matter was eliminated by the Supreme Court's decision in *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), where the Court, citing *Zdanok* and *Bernhard* with approval, unanimously concluded that a determination of patent invalidity against a party in prior litigation was binding against it in a subsequent suit to enforce the patent against others.[5]

---

5. Even apart from the elimination of the mutuality of estoppel theory, it could be argued that the defendants to this action bear the requisite degree of identity with the defendant in the state court proceeding since identity of parties turns upon "a factual determination of substance, not mere form." *Ellentuck v. Klein*, 570 F.2d 414, 425 (2d Cir. 1978). *See also*

Finally, there is no doubt that the judgment rendered in New York State Supreme Court was a final judgment "on the merits" for the purposes of res judicata. *See Taylor v. New York City Transit Authority*, 433 F.2d 665, 668 (2d Cir. 1970); *see generally* 1B Moore's Federal Practice ¶ 0.409[1] (1974 ed.).

■ This circuit, however, has relaxed the application of the res judicata doctrine in civil rights actions. In contrast to the usual formulation of the rule which bars the relitigation of any claim that might have been but was not actually raised and decided, a line of Second Circuit decisions has established that a constitutional claim will only be barred in a civil rights action if the issue was both actually raised and passed upon in the state court proceeding. *See Dieffenbach v. Attorney General of Vermont*, 604 F.2d 187, 198 (2d Cir. 1979); *Tomanio v. Board of Regents*, 603 F.2d 255, 258 (2d Cir. 1979), *rev'd on other grounds*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Winters v. Lavine*, 574 F.2d 46, 56–58 (2d Cir. 1978); *see also Perkins v. McGuire*, 480 F.Supp. 840, 841–843 (S.D.N.Y.1979); *Hammer v. Greenburgh*, 440 F.Supp. 27, 29 (S.D.N.Y.1977); *Morpurgo v. Board of Higher Education*, 423 F.Supp. 704, 710 (S.D.N.Y.1976) (Weinfeld, J.).

"It is entirely possible," however, "for a court to consider and reject a particular claim presented to it without any express discussion of or allusion to that claim." *Winters v. Lavine, supra*, 574 F.2d at 61. In *Winters*, plaintiff–appellant initially brought an Article 78 proceeding to seek review of an administrative determination denying her reimbursement under New York's Medicaid program for medical treatment rendered by a Christian Science practitioner or nurse. Winters advanced two arguments before the Appellate Division: (1) that she was entitled to repayment for the services rendered because a Christian Science nurse fell within the statutory definition of a "registered nurse" and (2) that if

*Expert Electric Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir. 1977).

the statute was interpreted in a contrary manner, it unconstitutionally denied her of her First Amendment free exercise rights. The Appellate Division affirmed the denial of benefits as follows:

> [T]he request for the payment of the cost of Christian Science nursing care was properly denied. Aside from the fact that a Christian Science nurse is not classified as a registered nurse (Education Law § 6901 et seq.,), petitioner has not demonstrated that she is entitled to payments pursuant to Social Services Law § 365–a, since there is insufficient [evidence] in the record to indicate either the nature of her illness or the treatment which she received.

*Id.* at 51. In her subsequent § 1983 action, Winters argued that the doctrine of res judicata did not bar the federal court from considering her constitutional claim because it had not been determined by the state court. The Second Circuit disagreed:

> . . . we find here that "[t]he question of the constitutional validity of the [statute, so construed,] was distinctly presented by [Winters'] petition and necessarily was resolved against [her] by the [decision upholding the denial of benefits]. Omitting to mention that question in the opinion did not eliminate it from the case or make the judgment of affirmance any less an adjudication of it."

*Id.* at 61 *quoting Grubb v. Public Utilities Commission*, 281 U.S. 470, 477–78, 50 S.Ct. 374, 378, 74 L.Ed. 972 (1930).

■ Winters is instructive for the case at bar. There is no question that Rothstein explicitly submitted his due process claim to the state court in his Article 78 proceeding. This claim occupied a full section in his Article 78 petition (see petition at 14–15) and was also discussed in his accompanying order to show cause (R.App. at 2.)[6] There is also no question that Justice Helman had to determine whether or not the police commissioner acted "arbitrarily" before he

6. "R.App. at 2" refers to the Record on Appeal from the Supreme Court's dismissal of Rothstein's state court petition.

could dismiss the petition on the ground that Rothstein's appeal to the Civil Service Commission foreclosed judicial review. Section 76(3) of the New York Civil Service Law provides that "[t]he decision of [a] civil service commissioner shall be final and conclusive, and not subject to further review in any court." Notwithstanding this unequivocal language, it is beyond cavil, as Justice Helman's opinion explicitly recognized, that

. . . New York courts have asserted jurisdiction over claims where state agency determinations under § 76 have been "purely arbitrary." *See, e. g., Trotman v. Hoberman*, 56 Misc.2d 915, 290 N.Y.S.2d 680 (Sup.Ct., Spec. Term, N.Y.Co.1968); *Santella v. Hoberman*, 29 A.D.2d 655, 286 N.Y.S.2d 647 (2d Dep't 1968). The rationale underlying the assertion of judicial supervision over the proceedings of state agencies in such cases is that the New York legislature did not intend the words of the statute to be read in the absolute sense. *Cf. Board of Educ. of City of New York v. Allen*, 6 N.Y.2d 127, 136, 188 N.Y.S.2d 515, 520, 160 N.E.2d 60 (1959).

*Taylor v. New York City Transit Authority, supra*, 433 F.2d at 668. In the instant case, we find that Justice Helman's determination that the police commissioner had not acted arbitrarily toward Rothstein subsumed consideration and a determination of Rothstein's due process claims since these due process claims were raised in the petition and were supported by the same allegations as a showing of arbitrariness–*i. e.*, the respondent's alleged failure to provide Rothstein with a copy of the first set of charges against him, notice of the February 10, 1977 hearing before the police department hearing examiner, a copy of the police commissioner's decision of dismissal, and notice of the May 1, 1978 hearing before the Civil Service Commissioner. *Cf. Taylor v. New York City Transit Authority, supra*, 433 F.2d at 668; *Morpurgo v. Board of Higher Education, supra*, ₊28 F.Supp. at 710 ("[t]o the extent that the Article 78 proceeding adjudicated the issues whether [the Board of Higher Education] employees acted arbitrarily or capriciously in dropping plaintiff from the doctoral program and

whether this action was taken in retaliation for plaintiff's civil rights activities, it is res judicata for the purposes of plaintiff's present suits"). In reaching this conclusion, we note that the record before Justice Helman consisted of over forty exhibits, including a police department record indicating that the charges had been mailed to the plaintiff (R.App. at 122), correspondence addressed to the plaintiff from the police department and from plaintiff's counsel informing him that the police department hearing was scheduled for February 10, 1977 (R.App. at 123, 124), various return receipts of mailings to the plaintiff, including one evidencing receipt of the hearing examiner's decision (R.App. at 111), and a letter from the Civil Service Commission notifying the plaintiff of the time and place of its hearing (R.App. at 114). *See generally* Goldberg Affs.R.App. 89–95, 116–121; Lance Aff.R.App. 78–83.

Plaintiff contends that Justice Helman's dismissal of the petition prior to answer made it impossible for him to show that the police commissioner acted arbitrarily or that he denied plaintiff his due process rights because "[a]n answer in conformity with [N.Y.Civ.Prac.Law § 7804(e) (McKinney's 1972)] would have included minutes of the two disciplinary hearings before the Police Department." (Plaintiff's Brief at 3). It is well established, however, that

[t]he doctrine of res judicata does not depend on whether the prior judgment was free from error. . . . Otherwise, judgments would have no finality and the core rationale of the rules of res judicata–repose–would cease to exist. . . . like the federal habeas corpus statutes, the federal civil rights acts do not provide for collateral review of state court judgments. Federal courts do not sit to review the determination of state courts.

*Mitchell v. National Broadcasting Company*, 553 F.2d 265, 272–73 (2d Cir. 1977) (citations omitted).

### Conclusion

■ Accordingly, defendants' motion for summary judgment on the grounds that the

instant action is barred by the principles of res judicata is granted.[7] The Clerk is directed to enter judgment dismissing the complaint.[8]

So Ordered.

---

7. Because of this court's decision that plaintiff's due process claim was actually raised and passed upon in his Article 78 proceeding, we need not address the res judicata effect of the administrative ruling by the Civil Service Commission. *See Mitchell v. National Broadcasting Company,* 553 F.2d 265 (2d Cir. 1977).

8. This court's § 1983 jurisdiction clearly does not extend to the plaintiff's state law claim that the defendants did not comply with various provisions in Sections 75 and 76 of the New York Civil Service Law.