**LUBRIZOL INTERNATIONAL, S.A., Lubrizol South Africa (Pty) Ltd., and Lubrizol Corporation, Plaintiffs,**

v.

**M/V STOLT ARGOBAY, her engines, boilers, etc., Sounion Shipping Inc., and Parcel Tankers, Inc., Defendants.**

No. 77 Civ. 1218 (CHT).

United States District Court,
S.D. New York.

Dec. 30, 1982.

Burlingham, Underwood & Lord, New York City, for defendants M/V STOLT AR-GOBAY and Sounion Shipping Inc.; Robert J. Zapf, Armen R. Vartian, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendant Parcel Tankers, Inc.; Brian D. Starer, Keith L. Flicker, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Plaintiffs Lubrizol International, S.A., Lubrizol South Africa (Pty) Ltd., and Lubrizol Corporation (collectively, "Lubrizol") brought this suit against the M/V STOLT ARGOBAY (the "ARGOBAY"); Sounion Shipping, Inc. ("Sounion"), the ARGOBAY's owner; and Parcel Tankers, Inc. ("PTI"), the ARGOBAY's charterer, for damages due to water contamination of cargo carried aboard the ARGOBAY on a voyage from Houston, Texas to Durban, South Africa. Sounion and PTI settled Lubrizol's claim for a payment of $100,000, each contributing $50,000 and reserving its rights against the other to recover its contribution to the settlement. Sounion now moves for summary judgment against PTI on the ground that an earlier arbitration award in Sounion's favor has res judicata effect. Alternatively, should the Court find that material issues of fact preclude an award of summary judgment, Sounion moves for an order staying this action pending arbitration of this dispute. PTI opposes Sounion's motion for summary judgment, on the grounds that the arbitration award has no res judicata effect, and because material issues of fact exist. PTI also opposes Sounion's motion to stay this action pending arbitration, on the ground that Sounion has waived its right to arbitration. Finally, PTI cross-moves for summary judgment in its own favor.

For the reasons discussed below, the cross-motions for summary judgment are denied, and Sounion's motion for a stay is granted.

*Background*

Pursuant to a charter party dated February 6, 1973 the ARGOBAY was time chartered to PTI by Sounion.[1] The ARGOBAY is a parcel tanker, whose system of 35 tanks and 10 separate pumps for discharging cargo enable it to simultaneously carry up to 28 different liquid cargoes.

The Lubrizol cargo that is the subject of this action is a liquid chemical compound used in the manufacture of transmission fluid. It was loaded in Houston, Texas in May 1975 into the ARGOBAY's tank 10 starboard.[2] Upon arrival in Durban, South Africa in July 1975, the ARGOBAY discharged another party's cargo of paraffin wax from tank 9 center. The vessel then proceeded to a second berth to unload the Lubrizol cargo. It is not disputed that samples of the cargo taken prior to discharge proved to be within specification. In other words, prior to discharge the cargo did not

---

**1.** The terms of the charter provided that the ARGOBAY would be manned by Sounion, its owner. The charter further provided that the owner was not responsible for any leakage, contamination, or deterioration of cargo,

 unless [it] results from (a) unseaworthiness existing at the time of loading or at the inception of the voyage which was discoverable by the exercise of due diligence, or (b) error or fault of the servants of the Owner in the loading, care or discharge of the cargo.

Charter Party for the STOLT ARGOBAY dated February 6, 1973 between Sounion as Owner and PTI as Charterer, Exh. A to the Affidavit of Nicholas Skarvelis, sworn to May 19, 1982 ("Skarvelis Aff."), cl. 33.

**2.** The ARGOBAY also carried three other Lubrizol cargoes in tanks 9 port, 9 starboard, and 10 port. These cargoes were apparently delivered in satisfactory condition and are not part of this dispute.

contain more than an allowable percentage of water. As discharge of the cargo in tank 10 starboard commenced, however, first water came through the lines, then cargo, which subsequent tests proved to be water contaminated. Lubrizol filed this action against PTI and Sounion in March 1977, seeking damages for the water contamination of the cargo, and PTI and Sounion asserted cross claims against each other.

In November 1975, approximately four months after the events at issue here, PTI transferred the ARGOBAY from its general products trade—in which it had been used to transport fats, oils, tallow, and, occasionally, chemical cargoes—to its chemical and solvent trade. Subsequently, a series of disputes arose between Sounion and PTI concerning the ARGOBAY's maintenance (particularly with respect to the coating on the tanks' interior surfaces), its pumping capacity, and the cleaning of its tanks and discharge lines. When those disputes culminated in PTI's placing the ARGOBAY off-hire in July 1976, Sounion promptly initiated arbitration. After several days of hearings, the arbitration panel rejected PTI's argument that Sounion was responsible for its crew's failure to properly clean and maintain tanks and lines. The panel concluded that PTI had acted improperly in placing the vessel off-hire and awarded to Sounion the costs and lost revenues incurred as a result of the vessel's off-hire. Skarvelis Aff., Exh. B at 28–29.[3] The panel, however, refused to rule that PTI was responsible for *any* contamination of cargoes due to the condition of the vessel's tanks and lines, stating that the cargo claims pending on the vessel were "undefined as to precise causative factors and should be handled in a normal manner between the parties and their insurers...." *Id.* at 32.

*Arguments*

Sounion and PTI settled Lubrizol's claim against them for $100,000. Sounion now moves for summary judgment against PTI, seeking to recover from PTI the $50,000

that it contributed to the settlement. Sounion argues first that no material issue of fact exists with respect to the cause of the water contamination. Noting that tests indicated that the cargo was uncontaminated prior to discharge, Sounion maintains that the contamination was the result of water in the discharge lines. Skarvelis Aff. ¶¶ 4, 6. According to Sounion, the same lines were used to discharge the cargo of paraffin from tank 9 center as were used to discharge the Lubrizol cargo in tank 10 starboard, which necessitated cleaning the lines and flushing them with water. *Id.* ¶ 6. Thus, Sounion contends that the Lubrizol cargo was contaminated by water which the crew had failed to drain completely from the discharge lines. *Id.* Further, Sounion argues that it is entitled to summary judgment as a matter of law. Sounion reasons that the cause of the contamination was related to the crew's cleaning of the lines; that the responsibility for cleaning rests squarely with PTI, according to the arbitration award, made in connection with the later dispute between the parties; and that the arbitration award should be given res judicata effect. Sounion's Memorandum in Support of Motion for Summary Judgment ("Sounion's Memorandum") at 3–5.

Should the Court find that material issues of fact preclude summary judgment, Sounion, citing the arbitration clause in the charter party, moves to stay this action pending arbitration. Noting that its right to arbitration was asserted in its pleadings, Sounion argues that the right was not waived by its participation in this action, as it had no right to compel arbitration against Lubrizol, who initiated this action. Sounion's Memorandum at 6–7. Finally, Sounion requests that the matter be referred to the same arbitration panel that resolved the earlier dispute between these parties, "as they are most familiar with the issues." Skarvelis Aff. ¶ 7.

PTI, however, responds that material issues of fact concerning the cause of the water contamination preclude summary

---

**3.** For ease of reference, the Court has numbered the pages of Exhibit B to the Skarvelis Affidavit, starting with the first page of the arbitrators' Decision and Award.

judgment. PTI's Statement of Material Facts as to Which There Exists a Genuine Issue to be Tried, ¶ 3. Most of its papers, however, are devoted to arguing that the earlier arbitration award is not entitled to res judicata effect. Specifically, PTI argues that the facts involved in the arbitrated dispute were significantly different from those now before this Court, and grew out of problems associated with the more sophisticated chemical and solvent market, to which the ARGOBAY was transferred. Affidavit of Keith L. Flicker, sworn to June 15, 1982 ("Flicker Aff."), ¶¶ 6, 7. PTI maintains that the panel addressed the crew's responsibility for contamination from cargo residues which remained in tanks and lines despite the crew's compliance with PTI's cleaning instructions, an issue distinctly different from the crew's responsibility for its failure to drain fresh water from the lines after cleaning, the alleged cause of the contamination in this case. Flicker Aff. ¶ 12.

Moreover, PTI contends that Sounion has waived arbitration, by its failure to initiate arbitration until five years after the inception of the action, and eight months after the settlement with Lubrizol, and by virtue of its agreement, in connection with the settlement with Lubrizol, to pursue its claim against PTI in this action. Flicker Aff. ¶¶ 15, 16. PTI argues further that there is no basis for referring this action to the same panel of arbitrators. Finally, PTI moves for summary judgment in its own favor.

*Discussion*

■ Summary judgment is appropriate only when there is no genuine issue as to any material fact, and the substantive law is in favor of the movant. 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Prac-

tice ¶ 56.15[1.–0], at 56–391 to –395 (2d ed. 1982). The burden is on the party moving for summary judgment to establish that there are no material facts in dispute. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir.1980). On a motion for summary judgment, the court must resolve ambiguities and draw all reasonable inferences in favor of the party opposing the motion. *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). To overcome a "convincing presentation" by the moving party, the party opposing the motion may not simply rest on conclusory allegations or denials, but must supply facts and arguments in opposition to the motion. *Quinn v. Syracuse Model Neighborhood Corp., supra,* 613 F.2d at 445; *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). But, when the evidentiary matter submitted by the moving party in support of its motion does not demonstrate the absence of a genuine issue of fact, the motion must be denied, even if no evidentiary matter is presented in opposition to the motion. *Adickes v. S.H. Kress & Co., supra,* 398 U.S. at 160, 90 S.Ct. at 1609.

■ In the case before the Court, the issue of causation of the water contamination is central to a determination of liability. Sounion, the moving party, has failed to establish the absence of material issues of fact regarding causation.[4] Sounion contends that the contamination resulted from water in the discharge lines, specifically, from water in the "ring main" system, a line that has connections to several tanks, including 10 starboard. Skarvelis Aff. ¶ 6. According to Sounion, the crew injected

4. Sounion states, in support of its motion, that "[t]he parties are in apparent agreement that there are no outstanding material issues of fact, despite the counter-statement submitted by [PTI], as PTI has also requested that the Court render summary judgment on this case in its favor." Sounion's Reply Memorandum in Support of Motion for Summary Judgment, at 1–2. However, it is well-settled that cross motions for summary judgment do not require a conclusion that no issue of fact exists. *Schwaben-*

*bauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981); *Walling v. Richmond Screw Anchor Co.,* 154 F.2d 780, 784 (2d Cir.1946), *cert. denied,* 328 U.S. 870, 66 S.Ct. 1383, 90 L.Ed. 1640 (1946). Granting summary judgment is inappropriate unless one of the parties is entitled to judgment as a matter of law upon genuinely undisputed facts. *Rhoads v. McFerran,* 517 F.2d 66, 67 (2d Cir.1975); *see* 6 J. Moore, J. Taggart & J. Wicker, Moore's Federal Practice, *supra,* ¶ 56.13.

water into the ring main to clean the lines used in discharging the paraffin wax from tank 9 center, and failed to adequately drain the system. *Id.*

However, this explanation is somewhat puzzling in light of the testimony of David Moon, a surveyor for Lubrizol whose deposition Sounion offers in support of its motion. Moon stated at his deposition that tank 9 center is not part of the ring main system. Deposition of D. Moon, taken June 10, 1981 ("Moon Dep."), at 55. If Moon's statement is correct, then the discharge of the paraffin wax, and presumably the subsequent clean-up efforts, were accomplished independent of the ring main system and were not the cause of water in the ring main. However, even if it were established that tank 9 center was connected to the ring main system, or that the water remained in the ring main as the result of another, earlier cleaning, there remain issues of fact concerning the cause of the water contamination. Specifically, Moon's testimony raises questions whether the valve aft of tank 10 starboard was left open, and what effect this may have had on the Lubrizol cargo. Moon does not suggest that the valve was an independent source of the water, but his deposition does indicate that the full explanation of the water contamination is more complex than Sounion would argue, and that an open valve may have contributed to the cargo contamination.

According to Moon, after the ARGO-BAY's chief officer observed the water and emulsified cargo coming through the lines, he suggested, and Moon agreed, that the ring main system should be closed off except for the section specifically required to discharge cargo from tank 10 starboard, to minimize the possibility of contamination from within the vessel. Moon Dep. at 51. Moon also testified that the water content of the cargo pumped into cars 5 and 6 indicated that that cargo was contaminated by water coming from the aft section of the ring main, the section the chief officer intended to have closed off. *Id.* at 70–72. If Moon was correct, then apparently the valve between tank 10 starboard and the aft section of the ring main was not closed,

or it malfunctioned. Thus, it may be that the water contamination was due to a combination of causes: if any of the cargo could have been saved by effectively closing the valve after the initial emission of water from the discharge line, or by a decision, in the first instance, to employ only that portion of the ring main necessary to discharge tank 10 starboard, then it would seem a vast oversimplification to attribute the contamination entirely to crew negligence in cleaning. In short, questions of fact concerning causation prevent a reasoned determination of liability.

 Even if the explanation for the water contamination were as simple as Sounion maintains, Sounion would not be entitled to summary judgment as a matter of law on the ground that the arbitration award has a res judicata effect. In its broad sense, the term res judicata refers to two distinctive effects of a former judgment, claim preclusion and issue preclusion. 18 C. Wright & A. Miller, Federal Practice & Procedure § 4402, at 6 (1981). Under the doctrine of claim preclusion, or "true" res judicata, a final judgment on the merits puts an end to the cause of action between the parties, and precludes them from relitigating issues relevant to that cause of action which were or could have been raised at trial. *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F.2d 530, 535 (5th Cir.1978); *Rothstein v. Civil Service Comm'n,* 498 F.Supp. 1124, 1127 (S.D.N.Y. 1980), *aff'd without opinion,* 652 F.2d 54 (2d Cir.1981). Under the doctrine of issue preclusion, or collateral estoppel, as it is commonly called, once a court has decided an issue necessary to its judgment, its decision precludes relitigation of that issue in a suit on a different cause of action involving a party to the earlier case. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Winters v. Lavine,* 574 F.2d 46, 57 (2d Cir.1978).

 It is clear that the arbitration panel did not rule on the particular cause of action before this Court—in fact, it expressly refused to rule on any individual claim for

cargo damage. Sounion's argument, then, is one of collateral estoppel rather than claim preclusion; it contends that the issue of responsibility for cleaning tanks and lines was determined by the arbitration panel, and the panel's award bars PTI from arguing that it was not responsible for water left in the lines by the crew after cleaning.[5]

Collateral estoppel, however, is available only when the issue litigated in the first action is the same issue before the court in the second action. 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.443[1] at 3901 (2d ed. 1982). Here, clear distinctions can be drawn between the issue of PTI's responsibility for inadequately cleaned lines in the circumstances addressed by the arbitrators, and PTI's responsibility for the crew's failure to drain the lines after cleaning.

The arbitration was the result of PTI's placing the ARGOBAY off-hire, which PTI contended was justified by Sounion's breach of the charter party. Among the grounds for breach cited by PTI was the crew's failure to adequately clean the tanks and lines, which had resulted in cargo contamination. The panel found that PTI was unjustified in placing the ARGOBAY off-hire, and, with respect to the claim of inadequate cleaning, stated broadly that

PTI, and not Sounion, was responsible for cleaning operations.[6] Skarvelis Aff., Exh. B at 27. However, the panel was careful to note that it was "not shown that the Master or crew ever failed to wash and steam lines according to the Charterers Manual and other instructions issued through the supercargo," id., and that it "underst[oo]d that the customary cleaning and draining was always carried out by the crew, after which they would blow air through the lines." Id. at 28. Thus, it is obvious that the effect of the decision is limited to the specific factual context in which it was made. The panel was addressing PTI's responsibility in a situation in which, despite the crew's efforts to clean in accordance with PTI's instructions, the sensitivity of the cargoes or the insufficiency of the cleaning instructions resulted in contamination from residues of earlier cargoes.[7] That is clearly an issue distinct from PTI's responsibility for the crew's failure to perform a necessary final function of a cleaning operation.[8] Thus PTI may not be precluded from arguing that Sounion, and not PTI, was responsible for the water contamination to the Lubrizol cargo.

PTI has also moved for summary judgment, but in view of the Court's conclusion that issues of fact preclude summary judgment, PTI's motion is also denied.

5. It is well-settled that a claim of collateral estoppel may be premised on an arbitration decision. *Maidman v. O'Brien,* 473 F.Supp. 25, 29 (S.D.N.Y.1979); *see generally,* 18 C. Wright & A. Miller, Federal Practice & Procedure § 4475, at 770–72 (1981).

6. For much of the period in dispute at the arbitration hearings, PTI had a supercargo aboard the ARGOBAY whose responsibilities included supervising the crew in matters related to loading, carriage and discharge of cargo. PTI argues that the supercargo's presence significantly influenced the arbitration decision. Flicker Aff. ¶¶ 7, 8; PTI's Memorandum in Opposition to Motion for Summary Judgment, at 6. Sounion argues that the supercargo's presence was not the "sole basis" for the arbitration decision, Sounion's Reply Memorandum in Support of Motion for Summary Judgment at 4, but does not contend that the supercargo's presence was not a factor in the decision. It is impossible to tell from the decision the extent to which the supercargo's presence influenced

the arbitration panel; however, it is clear that the panel addressed the parties' responsibility for cleaning under significantly different circumstances.

7. This conclusion is reinforced by a careful reading of the entire Decision and Award, whose tenor is that Sounion should not be held responsible for problems peculiarly associated with the transportation of highly volatile cargoes, particularly problems resulting from the ARGOBAY's unsuitability, in certain respects, for use in that market by reason of its age, design, or maintenance history, when PTI was aware of the ARGOBAY's limitations at the time of hire.

8. Significantly, the panel refused to rule on any individual claims of cargo contamination because those claims were "undefined as to precise causative factors." Skarvelis Aff., Exh. B, at 32.

572

Having determined that neither party is entitled to an award of summary judgment, the Court turns next to Sounion's motion to stay this action pending arbitration. " 'On a motion to compel arbitration, the Court must determine (1) whether there is an agreement to arbitrate; (2) whether there are arbitrable claims, and (3) whether there has been a waiver of the right to arbitration.' " *Janmort Leasing, Inc. v. Econo-Car Int'l, Inc.,* 475 F.Supp. 1282, 1288 (E.D.N.Y. 1979) (quoting *Bigge Crane & Rigging Co. v. Docutel Corp.,* 371 F.Supp. 240, 243 (E.D. N.Y.1973)). Since there is no dispute that these claims fall within the broad arbitration clause of the charter party,[9] Sounion is entitled to arbitration unless it has waived that right, as PTI contends it has.

Although it is well-settled that a party may, through his own conduct, waive his right to arbitration, *Commercial Iron & Metal Co. v. Bache Halsey Stuart Inc.,* 581 F.2d 246, 249 (10th Cir.1978), cert. denied, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979); *Gutor Int'l AG v. Raymond Packer Co., Inc.,* 493 F.2d 938, 945 (1st Cir.1974), whether waiver has occurred cannot be determined by an inflexible rule and depends on all of the circumstances of the particular case. *Midwest Window Systems, Inc. v. Amcor Indus., Inc.,* 630 F.2d 535, 537 (7th Cir.1980); *Reid Burton Constr., Inc. v. Carpenters Dist. Council,* 614 F.2d 698, 702 (10th Cir.), cert. denied, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980). However, federal policy favors arbitration, and waiver is not to be lightly inferred. *Midwest Window Systems, Inc. v. Amcor Indus., Inc., supra,* 630 F.2d at 536; *Gavlik Constr. Co. v. H.F. Campbell Co.,* 526 F.2d 777, 783 (3d Cir.1975). Moreover, when the opposing party has given notice of his arbitration defense, the burden is heavy on the party

seeking to prove waiver. *Martin Marietta Aluminum, Inc. v. General Elec. Co.,* 586 F.2d 143, 146 (9th Cir.1978).

PTI advances two arguments in support of its claim that Sounion has waived its right to arbitration. First, PTI argues that Sounion agreed, in connection with the Lubrizol settlement, to litigate its claim against PTI in this action. In support of this argument, PTI cites a Letter of Undertaking exchanged by underwriters for PTI and Sounion in connection with the settlement, which refers to PTI's and Sounion's "agreement to pursue [their] cross claims in [the action before this Court]." Flicker Aff., Exh. 2. Sounion, however, asserts that it never intended to waive its right to arbitration, which it asserted in its pleadings, and points out that the same Letter of Undertaking cited by PTI in support of its claim of waiver also states that "[t]his letter is entirely without prejudice to any rights or defenses which Sounion Shipping, Inc. may have under the charter party, contracts of carriage or applicable statutes or rules of law or otherwise, none of which rights or defenses are to be regarded as waived." *Id.* In view of the foregoing, the most that can be said of this Letter of Undertaking is that it is ambiguous with respect to the parties' intention to relinquish their right to arbitration.[10] In the absence of evidence that Sounion intended, as part of the agreement to settle with Lubrizol, to relinquish its right to arbitrate its cross claims, PTI's argument must fail.

PTI's second argument is that Sounion waived its right to arbitration through its failure to compel arbitration over the period of this lawsuit, particularly during the eight month period between the

9. The arbitration clause in the charter party provides for arbitration of "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter." Skarvelis Aff., Exh. A, cl. 53.

10. PTI also contends that the Stipulation and Order of Partial Discontinuance filed October 29, 1981, with respect to Lubrizol's action against PTI and Sounion, supports its claim that Sounion agreed to litigate the cross claims

in this action. The order simply states that the "action by the Plaintiffs against the Defendants is discontinued ... leaving the actions between the Defendants SOUNION SHIPPING INC. and PARCEL TANKERS, INC. pending." The Court is not persuaded that this statement evidences any agreement by Sounion to relinquish its arbitration defense, which it had asserted in its pleadings.

time the settlement with Lubrizol was reached and the time this motion was filed. A party may waive its right to arbitration by actively participating in a lawsuit or by taking other action inconsistent with that right. *Cornell & Co. Inc. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C.Cir.1966); *American Broadcasting Cos., Inc. v. Ali*, 434 F.Supp. 1108, 1112 (S.D.N.Y.), *aff'd without opinion*, 573 F.2d 1287 (1977); *see E.C. Ernst, Inc. v. Manhattan Constr. Co. of Texas*, 551 F.2d 1026, 1039–41 (5th Cir. 1977), *cert. denied*, 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978). Sounion's participation in this suit, however, was not inconsistent with its arbitration rights. It is undisputed that neither PTI nor Sounion had any right to compel Lubrizol, who brought this suit, to arbitrate. Lubrizol was not a party to the charter agreement. Furthermore, if Lubrizol had failed to recover anything in this suit, there would have been no necessity for arbitration between PTI and Sounion. Thus, Sounion's participation in this suit was not a waiver of its right to arbitration; in fact, it has asserted that right throughout this action. Nor was Sounion's delay in filing this motion from the time the settlement with Lubrizol was reached until May 1982 so unreasonable as to constitute waiver. As Sounion's counsel points out, the settlement with Lubrizol was finally effected in April 1982, only a short time before this motion was filed. Affidavit of Robert Zapf, sworn to June 17, 1982, ¶ 3.

■ More troublesome, however, is a question PTI did not raise: whether Sounion's actions in moving for summary judgment before this Court (and, in the event summary judgment is denied, for a stay pending arbitration), are inconsistent with its arbitration rights. The Court must conclude that they are. Sounion, in moving for summary judgment, asks this Court to be the final arbiter of the dispute, at the same time demanding arbitration if it does not get the judgment it seeks. Sounion could have sought arbitration first, and made its substantive arguments to the arbitrators instead of to this Court.

Nevertheless, the Court will order arbitration. For "[i]t is not 'inconsistency,' but the presence or absence of prejudice which is determinative of the issue [of waiver]." *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir.1968). *See Gavlik Constr. Co. v. H.F. Campbell Co., supra*, 526 F.2d at 783; *American Broadcasting Cos., Inc. v. Ali, supra*, 434 F.Supp. at 1112. There is no evidence that PTI has been prejudiced by virtue of its participation in this action,[11] or by its defense of this motion. In fact, the opposite may well be true. Therefore, the Court will order the parties to submit to arbitration of their cross claims.[12]

■ Finally, Sounion has requested that, if arbitration is ordered, the Court also order that the dispute be submitted to the same panel that heard the earlier dispute between these parties, since they are most familiar with the issues. However, the Court has concluded that the issues in this case are significantly different from those presented to the arbitrators earlier, and in any event is not persuaded by Sounion's argument. Sounion's request for the same panel is denied; accordingly, the panel should be selected in the manner provided for in the charter party.

In sum, Sounion's and PTI's cross motions for summary judgment are denied, and the parties are directed to proceed with arbitra-

---

11. PTI's only argument of prejudice concerns its reliance on Sounion's alleged agreement to forego its right to demand arbitration, an agreement which the Court has found is not supported by the evidence. Sufficient prejudice to support a claim of waiver may be found where, for example, the party who seeks arbitration has gained an advantage by invoking discovery procedures not available in arbitration. *Carcich v. Rederi A/B Nordie, supra*, 389 F.2d at 696 n. 7. PTI has advanced no argument that it has been prejudiced by any discovery invoked by Sounion, or, for that matter, by any of the discovery that has taken place in this action.

12. Furthermore, Sounion has not waived its right to arbitration by failing to demand it prior to making this motion. *Cf. General Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924 (5th Cir.1970) (arbitration not waived by failure to file pre-suit demand).

tion expeditiously. Accordingly, this action is stayed pending arbitration and will be placed on the suspense docket. However, either party may move to vacate the stay if arbitration is unduly delayed.

So ordered.