**NECA INSURANCE, LTD., Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and J.F. Buchanan Management Company, Inc., Defendants.**

**No. 84 Civ. 5097 (RWS).**

United States District Court,
S.D. New York.

Oct. 16, 1984.

Quirk & Bakalor, P.C., New York City, for plaintiff; Jeffrey J. Ellis, Richard Bakalor, New York City, of counsel.

Kroll, Pomerantz & Cameron, New York City, for defendant National Union Fire Ins.; Roy E. Pomerantz, New York City, of counsel.

Schwarzfeld, Ganfer, Shore & Rosenblum, New York City, for defendant J.F. Buchanan Management Co., Inc.; Neal Schwarzfeld, New York City, of counsel.

## OPINION

SWEET, District Judge.

In this diversity action, plaintiff NIL Insurance Ltd. ("NIL"), a reinsurance company, seeks a recovery against defendant National Union Fire Insurance Co. ("National Union"), an insurance company, and Buchanan Management Company ("Buchan-an"), a program administrator, for moneys paid in connection with the settlement of a personal injury action by National Union and for punitive damages. National Union and Buchanan have moved to compel arbitration of claims brought by NIL and to stay this action pending arbitration. National Union's motion to compel arbitration is granted, and the action is dismissed without prejudice subject to restoration to the calendar upon the completion of the arbitration.

**Prior Proceedings**

National Union entered into a reinsurance agreement with NIL in which NIL agreed to reinsure 100% of National Union's ultimate net loss under all policies covered by the agreement entered into by National Union or on behalf of National Union by co-defendant Buchanan. National Union thereafter paid $500,000 in settlement of a personal injury action brought by Martha Abbott (the "Abbott action") against defendant insured under a policy issued by National Union and reinsured by NIL. National Union unsuccessfully sought repayment from NIL, under the reinsurance agreement. Subsequently, certain funds were paid by a third party to National Union which also drew upon a NIL letter of credit to cover the cost of settling the Abbott action. National Union also served a demand for arbitration on NIL on July 11, 1984. NIL, on July 26, 1984, initiated this action and alleges eight causes of action in its complaint.

The first cause asserts negligence, bad faith, and breach of contract in National Union's alleged failure to notify NIL of settlement discussions and in the payment of the settlement and related costs. The second cause of action alleges bad faith and negligence on National Union's part in entering into the $500,000 settlement. The third and fourth causes of action allege negligence and breach of contract on National Union's part in not accepting various settlement offers and assert that NIL's liability to National Union, if not totally eliminated by the initial causes of action, should be limited to the amount of these

settlement offers. The fifth cause of action seeks a determination of NIL's liability to National Union as a consequence of the events surrounding the settlement. The sixth cause of action alleges that a fine resulting from delayed payment of the settlement was negligently incurred by National Union and therefore cannot be attributed to NIL.

The seventh cause seeks to determine the status of an $875,000 letter of credit issued by NIL to National Union. Finally, in its eighth cause of action, NIL alleges that both National Union and Buchanan improperly sought to begin their own reinsurance program in violation of obligations owed NIL under the reinsurance contract and demanded a letter of credit in excess of that needed to cover insurance claims, while a previous letter of credit had not been exhausted.

NIL also sought a stay of arbitration in New York State Supreme Court. National Union removed the state court action to this court where it was joined with this action pursuant to Fed.R.Civ.P. 42(a). National Union and Buchanan have now moved to compel arbitration of all disputed issues.

**Conclusions**

Article XVII of the reinsurance agreement between National Union and NIL provides that:

All disputes or differences arising out of the interpretation of this Agreement shall be submitted to the decision of two Arbitrators, one to be chosen by each party and in the event of the arbitrators failing to agree, to the decision of an Umpire to be chosen by the Arbitrators. ... they shall settle any dispute under this Agreement according to an equitable rather than a strictly legal interpretation of its terms ...

Article XV states that:

The true intent of the Agreement is that the Reinsurers shall, in every case to which this Agreement applies and in the proportions specified herein, follow the fortunes of the Company.

This Article shall not apply insofar as it can be shown during a duly held Arbitration in accordance with Article XVII of this Agreement that the Company has been tortious, willful, wanton, or reckless in handling a claim which is the subject matter of this Agreement.

Article IX provides that:

The Reinsurer agrees to abide by the loss settlements of the Company, it being understood, however, that when so requested, the Company will afford the Reinsurer ... an opportunity to be associated with the Company, at the expense of the Reinsurer ...

And Article XI provides that:

The Reinsurer will fund ... outstanding loss reserves ... by letter of credit.

Article XX states:

SERVICE OF SUIT: It is agreed that in the event of the failure of reinsurers hereon to pay any amount claimed to be due hereunder, Reinsurers hereon, at the request of the Company, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

■ In deciding a motion to compel arbitration, a court must determine 1) whether there is an agreement to arbitrate, 2) whether there are arbitrable claims, and 3) whether there has been a waiver of the right to arbitration. *Lubrizol Int'l S.A. v. M/V STOLT ARGOBAY*, 562 F.Supp. 565, 572 (S.D.N.Y.1982); *Janmort Leasing, Inc. v. Econo-Car Int'l, Inc.*, 475 F.Supp. 1282, 1288 (E.D.N.Y.1979).

It has been noted that a "written agreement for arbitration is the *sine qua non* of an enforceable arbitration agreement." *Garnac Grain Co. v. Nimpex International, Inc.*, 249 F.Supp. 986 (S.D.N.Y.1964). Article XVII of the reinsurance contract, *quoted supra*, imposes a contractual obligation on the parties to this action to arbitrate all disputes or differences arising out

of the interpretation of the agreement. NIL suggests that Article XX of the contract quoted above, providing for the reinsurer's consent to suit, eliminates any obligation to arbitrate.

■ This clause, however, does not by its terms limit the obligation to arbitrate but simply provides a consent to jurisdiction to enforce payments by Reinsurers granted through arbitration. As the Honorable Charles L. Brieant, Jr. ruled recently when interpreting the relationship between the arbitration and service of suit clauses of a similar contract involving National Union, an arbitration award cannot be enforced without access to the courts. The service of suit clause is therefore designed to guarantee the enforcement of arbitration awards and is not designed to supercede an obligation to arbitrate disputes within the scope of the arbitration clause. See In the Matter of the Petition of J.W. Pryke, et al., For an Order staying the Proceedings in an action Pending in the Court of Common Pleas of Chester County, Pa. Entitled National Union Fire Insurance, et al., 83 Civ. 6156 (CLB) (Sept. 8, 1983) (transcript at 10). Article XX does not vitiate the terms of Article XVII making arbitration a condition of the agreement.

■ However, the motion requires a determination as to whether or not the claims in this action are within the scope of arbitrable claims as defined by Article XVII. Of course, there is a strong federal policy in favor of construing commercial arbitration clauses broadly. See Hanes Corp. v. Millard, 531 F.2d 585 (D.C.Cir.1976); Junior Belle, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers Union, No. 81 Civ. 5659 (RWS) (slip op. Dec. 9, 1981, at 5). As soon as differing interpretations of the contract's provisions determine the liabilities of the parties, the dispute is within the scope of the arbitration clause in this contract. See Pryke, supra, at 11.

■ Claims 1 through 6 hinge upon the interpretation given to various clauses of the contract and are therefore arbitrable. Whether the payment in excess of $500,000 was in settlement of a claim within the meaning of Article IX, was an element of National Union's net loss within the meaning of Article IV(c), was within Article V's 100% reinsurance clause, and is encompassed by Article XV's "follow the fortunes" clause are the issues that determine liability on these claims. NIL's assertions of National Union's negligence and recklessness do not eliminate a duty to arbitrate, for Article XV states that these defenses can themselves be established in arbitration held in accordance with article XVII.

Liability in the seventh and eighth claims depends upon the interpretation and scope of the reinsurer's obligations under Article XI, which requires the reinsurer to fund loss reserves by letters of credit. Whether National Union improperly allocated funds from such letters of credit or made demands for unwarranted extensions of credit hinges upon interpretation of the clause itself and the manner in which NIL was obligated to provide funds to National Union. Similarly, the nature of Buchanan's obligations, as program administrator, to refrain from establishing a competitor reinsurance company depends upon an interpretation of Buchanan's contractual duties to NIL. Accordingly, the issues presented are arbitrable. Buchanan and NIL have agreed that in the event that the disputes between NIL and National Union were found arbitrable, Buchanan and NIL would agree to a stay of their dispute pending the outcome of the NIL-National Union arbitration.

National Union's motion to stay proceedings in this action and to compel arbitration of all issues set forth in the complaint, pursuant to the arbitration provision of the contract between the parties, is granted. The claims asserted by NIL against Buchanan are dismissed without prejudice. Judgment will be entered dismissing the action with leave to renew and restore it to the calendar if necessary upon completion of the arbitration without prejudice to any

rights of the parties as they exist at this time.

**IT IS SO ORDERED.**