OPINION OF THE COURT
Ira Gammerman, J.
Defendant reinsurers[1] move, pursuant to CPLR 7503, for an *63 order staying the instant action and directing arbitration in accordance with the treaties of reinsurance. Plaintiff Union Indemnity Insurance Company of New York (Union) opposes the application on the grounds that (1) an insurance company in liquidation cannot be compelled to arbitrate, (2) the parties have not agreed to arbitrate the claims, in suit, and (3) the defendants have not identified any arbitrable controversies. In the alternative, Union cross-moves to consolidate any arbitration that may be ordered into one single proceeding and that the court retain jurisdiction over all subsequent matters. After the institution of this action and after the drafting of this decision Union moved to have James P. Corcoran, Superintendent of Insurance of the State of New York, as Liquidator of Union Indemnity Insurance Company substituted as party plaintiff. However, the plaintiff will be referred to in this decision as Union.
Union through defendant Sten-Re, Cole Associates Inc. (Sten-Re) acting as intermediary, entered into three related reinsurance agreements (the treaties) with the other defendants. Under such contracts, the reinsurers agreed to indemnify Union for a portion of the liability incurred by them as a result of losses sustained by third parties covered under certain insurance policies issued by Union.
This action was instituted to recover in excess of $1,239,823 as reimbursements under the reinsurance contracts. Some of these defendants previously moved for a stay of the action and to compel arbitration. Initially, the court (Wallach, J.) denied the application indicating that there was not a sufficient showing that the dispute was an arbitrable controversy under the agreement. Renewal of the motion was denied by Judge *64 Wallach based upon the intervening insolvency and order of liquidation of plaintiff. This order denying renewal was then withdrawn by stipulation so that the parties could address the effect of the liquidation on these proceedings.
The reinsurers maintain that under the Federal Arbitration Act (9 USC § 1 et seq.) and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (opened for signature June 10, 1958, UST 2517, TIAS No. 6997, 330 UNTS 38 [1958; eff Dec. 29, 1970]) (the Convention) arbitration of this dispute is mandated and that the liquidation of Union does not preclude its going forward.
The Federal Arbitration Act is not implicated in these proceedings. As previously noted by this court in Michigan Natl. Bank-Oakland v American Centennial Ins. Co. (137 Misc 2d 575 [Sup Ct, NY County 1987]), the McCarran-Ferguson Act (15 USC § 1011 et seq.) vests the State with authority to regulate insurance, that part of this regulatory structure is article 74 of the Insurance Law respecting companies in liquidation and that under Matter of Knickerbocker Agency (Holz) (4 NY2d 245 [1958]) exclusive jurisdiction is vested in the court supervising the liquidation so as to preclude arbitration. (See also, Washburn v Corcoran, 643 F Supp 554 [SD NY 1986]; Skandia Am. Reinsurance Corp. v Schenck, 441 F Supp 715 [SD NY 1977]; Corcoran v Ardra Ins. Co., 657 F Supp 1223 [SD NY 1987], appeal dismissed 842 F2d 31 [2d Cir 1988]; Corcoran v Doug Reudlinger Inc., Sup Ct, NY County, Oct. 1987, slip opn No. M4096; Corcoran v Ardra Ins. Co., NYLJ, Aug. 15, 1988, at 24, col 3 [Sup Ct, NY County 1988].)
Not addressed or raised in Michigan Natl. Bank (supra) was the issue of the applicability of the Convention. In this action, however, several of the reinsurers are foreign corporations[2] and take the position that the Convention controls the issue of whether arbitration of this controversy is required.
As noted in Ledee v Ceramiche Ragno (684 F2d 184, 186-187 [1st Cir 1982]) for the Convention to apply the following questions must be answered in the affirmative:
"(1) Is there an agreement in writing to arbitrate the subject of the dispute? * * *
*65 "(2) Does the agreement provide for arbitration in the territory of a signatory of the Convention? * * *
"(3) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial? * * *
"(4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?”
Taking these considerations ad seriatim we find that arbitration must be directed.
WRITTEN AGREEMENT COVERING THE DISPUTE
The reinsurance treaties provide for arbitration as follows:
"article xix
"arbitration
"Should an irreconcilable difference of opinion arise between the parties to this Contract as to the interpretation of this Contract, or transactions with respect to this Contract, such difference will be submitted to arbitration upon the request of one of the parties, one arbiter to be chosen by the Company and one by the Reinsurer and an umpire to be chosen by the two arbiters before they enter into arbitration.
"Should the arbiters fail to agree upon the choice of an umpire within thirty (30) days of the appointment of the last arbiter, then each arbiter will nominate one umpire, the selection will be made by drawing lots, the name of the party first drawn shall be the umpire.
"In the event that either party should fail to choose an arbiter within sixty (60) days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who will in turn choose an umpire before entering the arbitration.
"Each party will present its case to the arbiters and the umpire within thirty (30) days of the appointment of the umpire and the written decision of any two or three will be final and binding upon the Company and the Reinsurer.
"The arbiters and the umpire are relieved from all judicial formalities and may abstain from the strict rules of law, interpreting this Contract as an honorable undertaking rather than as a merely legal obligation. By agreement between any *66 two of the three they may extend the time intervals contained in this ARTICLE.
"The arbiters and the umpire will be active or retired disinterested executive officers of Insurance or Reinsurance Companies of Lloyd’s Underwriters.
"Each party will pay the fee of its chosen arbiter and half of the fee of the umpire; the remaining costs of arbitration will be paid as the written decision directs. In the event both arbiters are chosen by one party, the fees of the arbiters and the umpire will be equally divided between the parties.
"Unless otherwise mutually agreed between the Company and the Reinsurer, any arbitration will take place in New York, New York or as otherwise designated by the Company.”
Union contends that a dispute over the failure to pay reimbursements is not encompassed within the terms of the arbitration agreement and that the service-of-suit clause of the treaties reflects the parties’ intention to litigate such matters. The reinsurers maintain that the service-of-suit clause does not dictate litigation, but mainly facilitates the acquisition of jurisdiction over foreign reinsurers for enforcement purposes. Further they assert that the dispute involves transactions under the contract and matters of contract interpretation and compliance. In particular, they argue that the proofs of claim and bordereau to be submitted by Union are inadequate to substantiate the amount claimed to be due.
The service of suit provision reads as follows:
"article xx
"service of suit:
"(Applicable only to other than domestic Reinsurers)
"A. In the event of the failure of the Reinsurer to pay any amount claimed to be due hereunder, the Reinsurer, at the request of the Company, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder will be determined in accordance with the law and practice of such court.”
Similar service-of-suit provisions in reinsurance agreements containing broad arbitration clauses have been considered in Hart v Orion Ins. Co. (453 F2d 1358 [10th Cir 1971]), Ideal Mut. Ins. v Phoenix Greek Ins. Co. (US Dist Ct, SD NY 1984 [No. 83 Civ 4637]), and Neca Ins. v National Union Fire Ins. *67 Co. (595 F Supp 955 [SD NY 1984]). In each instance, the courts have rejected plaintiffs’ reading of the reinsurance treaties and found that the inclusion of a service-of-suit clause was not inconsistent with the broad arbitration clause and did not work to modify that clause or constitute a waiver of the right to arbitrate. Indeed, China Union Lines v American Mar. Underwriters (458 F Supp 132 [SD NY 1978]), cited by Union, is not to the contrary; since there the court did not reach the issue of the compatibility of these clauses.
Furthermore, in Neca Ins. v National Union Fire Ins. Co. (supra), the court postulated that the service-of-suit clause was designed to guarantee enforcement of arbitration awards. Here too, the provision appears to be included to facilitate enforcement since the service-of-suit provision applies only to foreign reinsurers and not to all. If Union’s construction was accepted, then it could pursue foreign reinsurers in court, and domestic ones by arbitration, possibly leading to inconsistent findings as to the same claim. Surely, this anomalous result was not intended by the parties.
Under a broad arbitration provision, as found in these reinsurance treaties, the court’s inquiry regarding arbitrability is limited to determining whether there is or is not "a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract”. (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., 37 NY2d 91, 96 [1975].)
Defendants urge that no sums are due under the reinsurance treaties because adequate proofs of claim and bordereau are not available to substantiate the reimbursement sought. Union, however, believes such reimbursement is appropriate under the treaties. This controversy presents an "irreconcilable difference of opinion as to the interpretation of the Contract” and "transactions” thereunder. Under these circumstances, there is a reasonable relationship between the subject of the dispute and the general subject matter of the reinsurance agreements so as to render the claim arbitrable. (See, Matter of Nationwide Ins. Co. v Investors Ins. Co., supra [where disputes over payments to be made under reinsurance agreement were found within scope of arbitration provision].)
ARBITRATION IN SIGNATORY STATE
The agreement provides for arbitration in the United States. As previously noted this country ratified the treaty in *68 1970 and enacted implementing legislation. (9 USC § 201 et seq.) This requirement is satisfied.
AGREEMENT ARISES OUT OF COMMERCIAL TRANSACTION
The agreements set up a reinsurance relationship between the parties. Insurance matters are commercial transactions (United States v South-Eastern Underwriters Assn., 322 US 533 [1944]), and as such are subject to the Convention. (Hart v Orion Ins. Co., supra; Neca Ins. v National Union Fire Ins. Co., supra.)
PARTY NOT AMERICAN CITIZEN OR SOME REASONABLE RELATIONSHIP TO A FOREIGN STATE
Here, it is conceded that several of the reinsurers are foreign entities, based in Bermuda. Further it is alleged that negotiations occurred in London and that insurance was procured in the London insurance market.
Nonetheless, Union contends that the Convention does not apply when the arbitration is to be held in the same jurisdiction as the enforcement of the award, in this case New York. Defendants assert that article I (1) encompasses awards, which are not considered domestic awards. Thus, the question is, will arbitration between American citizens and foreign nationals result in a domestic award.
Article I (1) of the Convention provides: "1. This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.”
The legislation implementing the Convention (9 USC § 201 et seq.) further provides as follows:
"§ 202. Agreement or award falling under the Convention
"An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless *69 that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.”
It would appear that the Convention was broadly drafted to maximize recourse to arbitration (Scherk v Alberto-Culver Co., 417 US 506, reh denied 419 US 885 [1974]; Cooper v Ateliers de la Motobecane, 57 NY2d 408 [1982]), and that Union’s restrictive interpretation does not square with the language of the treaty, the intent of the drafters or the implementing legislation. (Bergesen v Muller Corp., 710 F2d 928 [2d Cir 1983].) There is sufficient foreign involvement in these proceedings to require recourse to the Convention.
Lastly, Union maintains that the New York State statutory scheme concerning liquidation of insurance companies, as embodied in Insurance Law article 74 and enunciated in Matter of Knickerbocker Agency (Holz) (4 NY2d 245, supra), vests exclusive jurisdiction in this court and thereby precludes arbitration based on public policy.
The Convention is the supreme law of the land, and takes precedence over local statutes. (Scherk v Alberto-Culver Co., supra; Matter of Sedco, Inc. v Petroleos Mexicanos Mexican Natl. Oil Co., 767 F2d 1140 [5th Cir 1985].) The Convention addresses in article V (1) (a) and (2) (b) the arguments advanced by Union that the arbitration agreement is null and void.
Article V (1) provides:
"1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
"(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made”.
Article V (2) states:
"2. Recognition and enforcement of an arbitral award may *70 also be refused if the competent authority in the country where recognition and enforcement is sought finds that * * *
"(b) The recognition or enforcement of the award would be contrary to the public policy of that country.”
The public policy defense under the Convention is to be narrowly construed. (Scherk v Alberto-Culver Co., supra.) Such defense must touch "the forum state’s most basic notions of morality and justice.” (Parsons & Whittemore Overseas Co. v Societe Generate de L'Industrie du Papier [RAKTA], 508 F2d 969, 974 [2d Cir 1974]; La Societe Nationale Pour La Recherche, La Production, Le Transport, La Transformation & La Commercialisation Des Hydrocarbures v Shaheen Natural Resources Co., 585 F Supp 57 [SD NY 1983], affd 733 F2d 260 [2d Cir], cert denied 469 US 883 [1984].) Following such a strict test, the rationale of Knickerbocker (supra) does not involve basic notions of morality and justice and so will not render the arbitration agreement null and void on public policy grounds. The interests of international comity outweigh such local statutory policy claims as antitrust and securities violations and regulation of bankruptcy proceedings, even where a different result might occur in a purely domestic context. (See, Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, 473 US 614 [1985]; Scherk v Alberto-Culver Co., supra.)
Likewise, incapacity rendering an award null and void is also to be narrowly read and refers to "internationally recognized defense[s] such as duress, mistake, fraud, or waiver”. (Rhone Mediterranee Compagnia Francese di Assicurazioni & Riassicurazoni v Lauro, 712 F2d 50, 53 [3d Cir 1983]; Oriental Commercial & Shipping Co. v Rosseel, N.V., 609 F Supp 75 [SD NY 1985].) None of these defenses are implicated under the Knickerbocker challenge. Moreover incapacity, as the treaty indicates by use of the past tense, must relate back to the time of contract. Intervening liquidation could not, therefore, support a claim of incapacity.
The parties to these treaties have an arbitrable controversy. Since foreign entities are involved, such arbitration must be held under the Convention. Here, the claims to be asserted arise out of one common set of facts and all parties have agreed to arbitrate. A consolidated arbitration of all claims (even those against the domestic defendants) would be the most expeditious means of resolving the controversy. Given *71 New York’s strong public policy regulating liquidated carriers, this court, as supervisor of the liquidation, will retain jurisdiction with respect to any award rendered.
Accordingly, the motion to compel arbitration and stay the instant action is granted. The parties are to proceed to consolidated arbitration in New York as called for in the treaties.

. Motion sequence numbers 001, 002 and 003 of the calendar of December 15, 1988 are hereby consolidated for purposes of disposition.
*63 In motion sequence number 001 Hudson Reinsurance Company Ltd. moves pursuant to CPLR 7503 for a stay of this action and an order compelling arbitration. In motion sequence number 002 Belvedere Insurance Company Ltd., Eagle Star Insurance Company of America, Firemen’s Insurance Company of Newark, New Jersey, National Underwriters (Reinsurance), Ltd., Telect Insurance Company, The 1792 Company, The Maiden Lane Syndicate, Inc., The South Place Syndicate, Inc., The Mutual Fire, Marine & Inland Insurance Company, Unity Fire and General Insurance Company and Sten-Re Cole & Associates, Inc. move to renew and reargue their motion to compel arbitration. Plaintiff cross-moves for denial of defendants’ motions or in the alternative for an order consolidating any arbitration ordered by the court into one proceeding and that the court retain jurisdiction over this matter. In motion sequence number 003 Cambridge Reinsurance Ltd., Hemisphere Marine & General Assurance (Bermuda) Ltd. and Trent Insurance Company Ltd. also seek a stay of this litigation and an order directing arbitration of the instant dispute.

. The Hudson Reinsurance Company Ltd., Belvedere Insurance Company Ltd., National Underwriters (Reinsurance) Ltd., Telect Insurance Company Ltd., Cambridge Reinsurance Ltd., Hemisphere Marine & General Assurance (Bermuda) Ltd. and Trent Insurance Company Ltd. are all Bermuda corporations having their principal place of business in Hamilton, Bermuda.