[No. S117735. July 18, 2005.]

ANTONE BOGHOS, Plaintiff and Respondent, v.
CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, et al.,
Defendants and Appellants.

COUNSEL

LeBoeuf, Lamb, Greene & MacRae, Dean Hansell, Sharon C. Corda, Jared M. Katz, Seth W. Wiener and George E. Anhang for Defendants and Appellants.

Hancock Rothert & Bunshoft, Paul J. Killion and Leslie Kurshan for Unionamerica Insurance Company as Amicus Curiae on behalf of Defendants and Appellants.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Defendants and Appellants.

Bohn & Bohn, Robert H. Bohn; Trial Lawyers for Public Justice, Michael J. Quirk, F. Paul Bland, Jr., and Kate Gordon for Plaintiff and Respondent.

Robinson, Calcagnie & Robinson and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Respondent.

Public Citizen Litigation Group, Scott L. Nelson, Brian Wolfman; Kasdan, Simonds, Riley & Vaughan and Vance C. Simonds for Public Citizen, Inc., as Amicus Curiae on behalf of Plaintiff and Respondent.

Deborah Zuckerman, Michael Schuster; Kemnitzer, Anderson, Barron & Ogilvie and Nancy Barron for AARP and The National Association of Consumer Advocates as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**—This case presents issues concerning the effect and enforceability of an arbitration clause in a contract of disability insurance. The lower courts refused to compel arbitration of contract and tort claims brought by the insured against the insurer after the latter ceased paying benefits. We reverse and remand for further proceedings.

### I. BACKGROUND

Antone Boghos owned a plumbing business. In September 1998, he applied to a Los Angeles insurance broker for disability insurance underwritten by Certain Underwriters at Lloyd's of London (hereafter the Underwriters). Boghos requested and the Underwriters eventually granted coverage for monthly payments of up to $10,000 for up to 60 months in the event Boghos, because of accident or sickness, became unable to perform the material and substantial duties of his occupation. An endorsement to the policy defined those duties as "administrative and executive duties only." Another endorsement excluded from coverage "any disease or disorder or condition(s) due to or arising from the lumbar sacral back and adjacent and related structures." In his application, Boghos represented that he had earned $176,080 from his business in the prior year. Boghos signed both pages of the two-page application, thereby acknowledging his understanding and agreement that "any dispute concerning this insurance must be submitted to binding arbitration . . . ."[1]

---

[1] The full paragraph, printed bold, reads: "Binding Arbitration—Waiver of Right to Trial by Jury: I understand and agree that any dispute concerning this insurance must be submitted to binding arbitration if the amount in dispute exceeds the jurisdictional limits of small claims court and is not resolved with a formal review by Underwriters. I understand and agree that this is a waiver of my and Underwriters['] rights to a trial by jury."

The policy became effective on January 8, 1999. It contained the following arbitration clause, printed bold: "BINDING ARBITRATION: Not withstanding [sic] any other item setforth [sic][2] herein, the parties hereby agree that any dispute which arises shall be settled in Binding Arbitration. By agreeing to Binding Arbitration, all parties acknowledge and agree that they waive their right to a trial by jury. Binding Arbitration will be held before a neutral arbitrator who will be agreed to by all parties. If the parties cannot agree as to the arbitrator, or believe that a single arbitrator cannot adequately settle the dispute, then an arbitration panel made up of three arbitrators shall be formed. One arbitrator shall be appointed by Us. The second arbitrator shall be appointed by You. The third arbitrator shall be agreed by the two appointed arbitrators. The venue shall be in Los Angeles County or at another location if agreed by all parties. The arbitration will be governed by the commercial arbitration rules of the American Arbitration Association. Costs for the arbitration shall be equally split among the parties."

The policy also included, as part of Lloyd's standard form "Certificate of Insurance," a "Service of Suit Clause." As relevant here, the clause provides: "Service of Suit Clause. In the event of the failure of Underwriters to pay any amount claimed to be due under the insurance described herein, Underwriters have agreed that, at the request of Assured (or Reinsured) they will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. In any suit instituted against any one of them upon the insurance described herein, Underwriters have agreed to abide by the final decision of such Court or of any Appellate Court in the event of an appeal."

In November 2001, Boghos sued the Underwriters for ceasing to pay benefits under the policy. In his complaint, Boghos alleged that he received, in May 2000, "a traumatic blow to the back of his head, neck and buttocks which caused him to lose consciousness. As a result of the incapacitating injuries [Boghos] suffered during the accident," his complaint continued, "he has been unable to return to work since the accident." In a subsequent declaration, Boghos further described his continuing injuries as "constant vertigo and headaches, causing [him] to lose thirty-five pounds from constant vomiting," requiring him to take prescription drugs, and leaving him "unable to concentrate and to be active enough to pursue" his administrative and

---

[2] No party attributes any significance to the peculiarities of spelling in this important sentence of the policy. Accordingly, we will regularize the spelling throughout the remainder of this opinion.

executive duties. At some unspecified point thereafter, the Underwriters apparently began to pay disability benefits. In December 2000, however, Boghos received a letter from the Underwriters refusing to continue paying. In his complaint, Boghos alleged claims for breach of contract, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress.

The Underwriters moved to compel arbitration of all claims. The trial court denied the petition, holding among other things that the policy's service of suit clause conflicted with the arbitration clause and that any ambiguity between the two should be resolved in Boghos's favor by refusing to compel arbitration. The Court of Appeal affirmed, adding its own conclusion that the arbitration clause was unenforceable under decisions of this court holding that persons who have agreed to arbitrate rights based on statute cannot be required to pay costs they would not have to pay if suing in court. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*) and *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*).) We granted the Underwriters' petition for review.

## II.  Discussion

### A.  *The Arbitration and Service of Suit Clauses*

The lower courts, as mentioned, concluded the policy's arbitration and service of suit clauses conflicted, thereby creating an ambiguity that had to be resolved in favor of the insured. We conclude the lower courts erred.

▮    Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545]; see Civ. Code, § 1636.) "If contractual language is clear and explicit, it governs." (*Bank of the West*, at p. 1264; see Civ. Code, § 1638.) If the terms are ambiguous, we interpret them to protect " 'the objectively reasonable expectations of the insured.' " (*Bank of the West*, at p. 1265, quoting *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer. (*Bank of the West*, at p. 1264.)

▮    When a party to an arbitration agreement challenges the agreement as unenforceable, we decide the issue based on the same state law standards that apply to contracts generally. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971–972 [64 Cal.Rptr.2d 843, 938 P.2d 903].)

■ The United States Arbitration Act (9 U.S.C. § 1 et seq.), commonly known as the Federal Arbitration Act, creates a presumption in favor of arbitrability (*Engalla v. Permanente Medical Group, Inc., supra,* at p. 971; see 9 U.S.C. § 2) and permits courts to refuse to enforce agreements to arbitrate only "upon such grounds as exist at law or in equity for the revocation of any contract" (9 U.S.C. § 2). Similarly, title 9 of the Code of Civil Procedure (§ 1280 et seq.) expresses a strong public policy favoring the enforcement of valid agreements to arbitrate. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

■ In a typical service of suit clause, one or more parties agree to submit to the jurisdiction of courts for designated purposes related to the contract in which the clause appears. Here, the Underwriters have agreed, "[i]n the event of [their] failure . . . to pay any amount claimed to be due under the [policy]," and "at the request of Assured," to "submit to the jurisdiction of a court of competent jurisdiction within the United States."

■ Courts in other jurisdictions have generally enforced arbitration clauses in contracts, including insurance contracts, that have also included service of suit clauses, rejecting the argument that consent to service creates an ambiguity or waives the right to compel arbitration. These courts have reasoned that the two clauses do not conflict because the service of suit clause should be interpreted, in view of the presumption favoring arbitration, as intended to facilitate enforcement of the arbitration clause.[3] The only California case on point is consistent with the general rule. In *Appalachian Insurance Co. v. Rivcom Corp.* (1982) 130 Cal.App.3d 818 [182 Cal.Rptr. 11], the Court of Appeal held that a service of suit clause did not supersede, or create an ambiguity in light of, a clause requiring that the value of any loss be determined by appraisal, a form of arbitration expressly subject by statute to California arbitration law. (*Id.,* at pp. 824, 827–828; see Code Civ. Proc., § 1280, subd. (a).) The court reasoned that both clauses could operate because the service of suit clause allowed the insured to sue in court if the insurer refused to pay the appraised value. (*Appalachian Insurance Co. v. Rivcom Corp., supra,* at pp. 827–828.)

---

[3] E.g., *Hart v. Orion Insurance Company* (10th Cir. 1971) 453 F.2d 1358, 1361; *West Shore Pipe Line v. Associated Elec. & Gas* (N.D.Ill. 1992) 791 F.Supp. 200, 203–204; *Brener v. Becker Paribas, Inc.* (S.D.N.Y. 1985) 628 F.Supp. 442, 451–452; *NECA Ins., Ltd. v. National Union Fire Ins. Co.* (S.D.N.Y. 1984) 595 F.Supp. 955, 957–958; *Old Dominion Ins. v. Dependable Reinsurance* (Fla.Dist.Ct.App. 1985) 472 So.2d 1365, 1368; cf. *Geldermann, Inc. v. Stathis* (1988) 177 Ill.App.3d 414 [532 N.E.2d 366, 369–370, 126 Ill.Dec. 681] [forum selection clause]; but see *Transit Cas. Co. v. Certain Underwriters* (Mo.Ct.App. 1998) 963 S.W.2d 392, 399.

The Underwriters have asked us to take judicial notice of additional federal decisions that do not appear in West's Federal Reporter and Federal Supplement. The motion is granted. (Evid. Code, § 451, subd. (a) ["Judicial notice shall be taken of . . . [¶] [t]he decisional . . . law . . . of the United States . . . ."].)

■ This case is easier to resolve than the cases just mentioned. In none of those cases did the court note that the contract at issue included language establishing priority as between the arbitration (or appraisal) clause and the service of suit clause. Here, in contrast, the contract does include such language. The first sentence of the arbitration clause expressly declares that, *"Notwithstanding any other item set forth herein,* the parties hereby agree that any dispute which arises shall be settled in Binding Arbitration." (Italics added.) The phrase "[n]otwithstanding any other item" clearly indicates the parties intended the arbitration clause to apply according to its terms and for all disputes to be settled in binding arbitration, even if other provisions, read in isolation, might seem to require a different result. No ambiguity exists.

Boghos advances several arguments against this conclusion. None is persuasive.

■ First, Boghos argues that, given the service of suit clause, the arbitration clause cannot be enforced without rendering the former surplusage. Boghos thus invokes the general rule of contract interpretation that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) The rule's effect, among other things, is to disfavor constructions of contractual provisions that would render other provisions surplusage. (*Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 361–362 [71 Cal.Rptr.2d 523].) To enforce the policy's arbitration clause according to its terms does not render the service of suit clause surplusage. The service of suit clause continues to have real effect because it requires the Underwriters to submit to the jurisdiction of United States courts in actions to compel arbitration or to enforce arbitral awards, thus easing burdens the insured might encounter in obtaining jurisdiction over the Underwriters in London. (*Hart v. Orion Insurance Company, supra,* 453 F.2d 1358, 1361.)

■ Boghos argues that to read the service of suit clause in this manner would cause it to duplicate a right guaranteed by statute, once again rendering it surplusage. The Code of Civil Procedure, Boghos correctly points out, gives California courts personal and subject matter jurisdiction to compel arbitration and to enforce arbitral awards when a contract to arbitrate is made in this state. (See Code Civ. Proc., § 1293.)[4] ■ Nevertheless, the service of suit clause confers rights the relevant statutes do not. For example, through the service of suit clause the Underwriters consent to suit not just in California but in any "court of competent jurisdiction within the United

---

[4] "The making of an agreement in this State providing for arbitration to be had within this State shall be deemed a consent of the parties thereto to the jurisdiction of the courts of this State to enforce such agreement by the making of any orders provided for in this title and by entering of judgment on an award under the agreement." (Code Civ. Proc., § 1293.)

States," apparently at Boghos's choice. This is more than California law provides. A contract term, in any event, is not surplusage merely because it confers a right already guaranteed by statute. (See *Berg v. MTC Electronics Technologies Co., supra,* 61 Cal.App.4th 349, 361–362.) Moreover, policies issued by underwriters at Lloyd's containing the same service of suit clause are sold not just in California, but throughout the United States. That a contractual provision intended to bind insurers to submit to service under a variety of statutory schemes will duplicate certain statutory rights seems both unavoidable and unobjectionable.

Boghos also argues that the service of suit clause, if read as intended to facilitate arbitration, narrows the circumstances under which the insurers must submit to the jurisdiction of a court. For purposes of this argument, Boghos interprets the language by which the Underwriters submit to jurisdiction ("[i]n the event of [their] failure . . . to pay") as an assertion that they do not submit to the court's jurisdiction to compel arbitration of claims not involving a failure to pay, even though the arbitration clause is broad enough to cover such claims. The relevance of this additional argument to the issue before us, namely the enforceability of the arbitration clause, is not evident. The argument lacks merit, in any event. Regardless of the policy language, Code of Civil Procedure section 1293, as Boghos acknowledges, gives California courts personal and subject matter jurisdiction to enforce arbitration agreements formed in California. The service of suit clause, even if limited to claims based on the Underwriters' failure to pay benefits, still gives Boghos the additional, nonstatutory right to require the Underwriters to appear not just in California courts but in any "court of competent jurisdiction within the United States."

▮ Boghos next argues the service of suit clause must take priority over the arbitration clause under the rule that more specific contractual provisions control over more general ones. (See Code Civ. Proc., § 1859;[5] *National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 386 [131 Cal.Rptr. 42, 551 P.2d 362].) But this rule applies only when the provisions in question are truly inconsistent. (Code Civ. Proc., § 1859; *National Ins. Underwriters v. Carter, supra,* 17 Cal.3d at p. 386.) The arbitration clause here is neither inconsistent with, nor ambiguous in light of, the service of suit clause because the first sentence of the arbitration clause ("[n]otwithstanding any other item set forth herein") explicitly requires that clause to be enforced even if other provisions, read in isolation, might seem to dictate a different result.

---

[5] "In the construction of a statute the intention of the Legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it." (Code Civ. Proc., § 1859.)

Finally, Boghos argues that to enforce the arbitration clause would in effect allow the Underwriters to disavow a promise to submit to suit in court and give them a license to deceive policyholders. To the contrary, given the unambiguous language of the arbitration clause, no such promise exists. Nor is the policy deceptive. To be sure, insurers must draft policy language with an eye to how insureds will likely understand it. An insurer must, for example, make "conspicuous, plain and clear" any provision that creates an exception to or limitation on coverage reasonably expected by the insured. (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204 [13 Cal.Rptr.3d 68, 89 P.3d 381].) We have not held that an arbitration clause constitutes an exception to or limitation of coverage for purposes of this requirement. Yet even if we were to apply this prophylactic rule against deception, the arbitration clause here would easily pass muster as conspicuous, plain, and clear. A coverage limitation is conspicuous when it is positioned and printed in a manner that will attract the reader's attention. (*Id.*, at pp. 1207–1208.) A limitation is plain and clear when, from the perspective of an average layperson, it is communicated in clear and unmistakable language. (*Id.*, at p. 1212; *State Farm Mut. Auto Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 201–202 [110 Cal.Rptr. 1, 514 P.2d 953].) While the arbitration clause here is printed in text the same size as the other provisions in the policy, it is the only provision printed entirely in bold. Moreover, the arbitration clause's first sentence clearly and unmistakably requires arbitration of "any dispute" arising under the policy, "[n]otwithstanding any other item" in the policy. Finally, both pages of the application for insurance informed Boghos in bold print, immediately above the signature line, that by signing he "underst[oo]d and agree[d] that any dispute concerning this insurance must be submitted to binding arbitration . . . ." A reasonable person reading the application and policy would understand that he would be required to arbitrate all disputes arising under the policy.

### B. *Armendariz and Little*

Boghos next contends the policy's arbitration clause is unenforceable under *Armendariz, supra,* 24 Cal.4th 83, and *Little, supra,* 29 Cal.4th 1064, because it requires him to pay costs he would not have to pay were he suing in court, namely costs imposed by the American Arbitration Association (AAA)[6] and

---

[6] As noted, the arbitration clause expressly invokes the AAA's commercial arbitration rules. The full, up-to-date text of those rules is available on the AAA's Internet site at <http://www.adr.org> (as of July 18, 2005). Having given the parties appropriate notice before oral argument that we proposed to take judicial notice of the rules on our own motion (Evid. Code, § 459, subds. (c) & (d)), we now do take judicial notice of them. (See Evid. Code, § 452, subd. (h) [permitting judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"]; *Century City Medical Plaza v. Sperling, Isaacs & Eisenberg* (2001) 86 Cal.App.4th 865, 869–870 [103 Cal.Rptr.2d 605].)

the arbitrators' fees. The cases on which Boghos relies, which address the legality and effect of employer-mandated arbitration clauses covering claims by employees based on statutory and constitutional provisions, do not support his contention.

In *Armendariz, supra,* 24 Cal.4th 83, we set out the conditions under which an employer can lawfully require its employees to arbitrate claims arising under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA). Through the FEHA, we reasoned, the Legislature created substantive and procedural rights not just for the benefit of individuals but also for public purposes; accordingly, those statutory rights are unwaivable under Civil Code sections 1668[7] and 3513.[8] (*Armendariz,* at pp. 100–101.) To ensure that employer-mandated arbitration agreements would not become vehicles for the waiver of FEHA rights, we held that such agreements are enforceable only if they provide for neutral arbitrators, more than minimal discovery, a written award, and all of the types of relief that would otherwise be available in court and, in addition, " '*do*[] *not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.*' " (*Armendariz,* at p. 102, italics added, quoting *Cole v. Burns Intern. Security Services* (D.C. Cir. 1997) 323 U.S. App. D.C. 133 [105 F.3d 1465, 1482].) We borrowed these requirements from an analogous federal decision, *Cole,* which had in turn formulated them to ensure that employer-mandated arbitration agreements did not violate title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

In *Little, supra,* 29 Cal.4th 1064, we extended *Armendariz, supra,* 24 Cal.4th 83, and applied its requirements to employer-mandated arbitration of tort claims for wrongful discharge in violation of public policy (i.e., claims under *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]). Justifying the extension, we reasoned that *Tameny* claims, even though not statutory, are nevertheless "almost by definition unwaivable" (*Little,* at p. 1077) because they seek to enforce public policies that are carefully tethered to fundamental policies delineated in constitutional or statutory provisions (*ibid.*; see *Silo v. CHW Medical Foundation* (2002) 27 Cal.4th 1097, 1104 [119 Cal.Rptr.2d 698, 45 P.3d 1162]; *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680]). To extend the *Armendariz* requirements to *Tameny* claims was also consistent with the object of those requirements, which is "to

---

[7] "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (Civ. Code, § 1668.)

[8] "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." (Civ. Code, § 3513.)

ensure minimum standards of fairness in arbitration so that employees subject to mandatory arbitration agreements can vindicate their public rights in an arbitral forum." (*Little*, at p. 1080.)

Boghos asks us to extend the holdings of *Armendariz, supra,* 24 Cal.4th 83, and *Little, supra,* 29 Cal.4th 1064, to insurance disputes and to declare the policy's arbitration clause unenforceable because it requires him to share with the Underwriters the costs of arbitration and the arbitrators' fees. We find no merit in the request. Even if the holdings in *Armendariz* and *Little* might conceivably be extended beyond the employment context to cover other types of unwaivable claims based on or tethered to statutes, Boghos's claims for nonpayment of benefits and breach of the covenant of good faith and fair dealing cannot properly be so described. Boghos's claim that the Underwriters have failed to pay benefits under the policy is a claim for breach of contract, pure and simple. His claim that the Underwriters have, by failing to pay, violated the covenant of good faith and fair dealing may properly be described either as a tort claim (*Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 433–434 [58 Cal.Rptr. 13, 426 P.2d 173]) or as a special type of contract claim for which we allow tort damages (*ibid.*; *Erlich v. Menezes* (1999) 21 Cal.4th 543, 551–552 [87 Cal.Rptr.2d 886, 981 P.2d 978]). While insurance bad faith claims were for a time thought to have a statutory basis in the Unfair Practices Act (Ins. Code, § 790 et seq.), we definitively rejected that position in *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304 [250 Cal.Rptr. 116, 758 P.2d 58], and expressly overruled prior contrary authority (*ibid.*, overruling *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329]). For the same reason, insurance bad faith claims also cannot properly be described as tethered to a statute, in the sense that *Tameny* claims subject to arbitration under *Little* are necessarily " 'based on policies "carefully tethered to fundamental policies . . . delineated in constitutional or statutory provisions . . . ." ' " (*Little*, at p. 1077, quoting *Silo v. CHW Medical Foundation, supra,* 27 Cal.4th 1097, 1104.) While the business of insurance is sufficiently affected with a public interest to justify its regulation by the state (see Ins. Code, § 680 et seq.), as Boghos observes, the fact of regulation does not suffice to demonstrate that any given insurance-related claim entails an unwaivable statutory right, or that any given claim seeks to enforce a public policy articulated in a statute.

█ In any event, we have not extended the *Armendariz/Little* cost-shifting rule to common law claims generally. The rule is a judicially created exception to Code of Civil Procedure section 1284.2, which provides that the parties to an arbitration agreement do share costs "[u]nless the arbitration agreement otherwise provides or the parties to the arbitration otherwise

agree . . . ."[9] We justified our creation of the exception in *Armendariz, supra,* 24 Cal.4th 83, by reasoning that section 1284.2 "is a default provision, and the agreement to arbitrate a statutory claim [e.g., a FEHA claim] is implicitly an agreement [by the employer] to abide by the substantive remedial provisions of the statute" (*Armendariz,* at p. 112) and to pay "all types of cost that are unique to arbitration." (*Id.,* at p. 113.) The same reasoning fairly covers common law *Tameny* claims, which must be carefully tethered to statutory or constitutional provisions (see *Little, supra,* 29 Cal.4th 1064, 1077, 1081–1082), but not to common law claims generally. To extend *Armendariz* to the arbitration of claims not carefully tethered to statutory or constitutional provisions would seem an arbitrary refusal to enforce section 1284.2, a legislative act, and thus raise concerns about judicial policymaking similar to those that led us to require a statutory or constitutional basis for *Tameny* claims. (*Silo v. CHW Medical Foundation, supra,* 27 Cal.4th 1097, 1104; *Gantt v. Sentry Insurance, supra,* 1 Cal.4th 1083, 1095.)

## C. *Remaining Issues*

Our decision leaves certain issues to be decided on remand. The trial court, as mentioned, held that the policy's service of suit clause conflicted with the arbitration clause and that any ambiguity between the two should be resolved in Boghos's favor by refusing to compel arbitration. The Court of Appeal affirmed, adding its own erroneous conclusion that the arbitration provision was unenforceable under *Armendariz, supra,* 24 Cal.4th 83, and *Little, supra,* 29 Cal.4th 1064. Consequently, no court has yet addressed the questions of (1) whether the clause of the arbitration provision requiring Boghos to share the costs of arbitration and the arbitrator's (or arbitrators') fees is unenforceable under the general law of unconscionability, (2) whether Boghos's ability to pay his share of the costs and fees is relevant to the question of unconscionability and, if so, whether he must prove he is factually unable to pay,[10] (3) whether the clause of the arbitration provision selecting the venue of arbitration ("Los Angeles County or at another location if agreed by all parties") is unconscionable, and (4) whether, if the cost-sharing clause, the venue-selection clause or both are unconscionable, the offending clause or

---

[9] "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit." (Code Civ. Proc., § 1284.2.)

[10] The Underwriters dispute Boghos's claim of inability to pay, asking us to take judicial notice of court documents from his recent divorce proceeding purporting to show that he has substantial income and assets. Because we remand Boghos's claim of unconscionability for consideration by the lower courts, we deny the Underwriters' related requests for judicial notice without prejudice to refiling below. The Court of Appeal earlier denied a similar request for judicial notice only because that court decided the case on a rationale that did not require an examination of Boghos's ability to pay.

clauses should be severed and the matter nevertheless referred to arbitration (see Civ. Code, § 1670.5). Considerations of judicial economy make it appropriate to leave these questions to the lower courts in the first instance. (See Cal. Rules of Court, rule 29(b)(3).)

## III.   DISPOSITION

The judgment of the Court of Appeal is reversed and remanded for further proceedings consistent with the views set forth herein.

George, C. J., Kennard, J., Baxter, J., Chin, J., and Moreno, J., concurred.