Filed 9/17/24  Jacob v. Western Digital Technologies CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JESTER JACOB,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WESTERN DIGITAL TECHNOLOGIES, INC., et al.,<br><br>    Defendants and Appellants. | H050775<br>(Santa Clara County<br> Super. Ct. No. 22CV394446) |

### I.  INTRODUCTION

This is an appeal from an order denying a motion to compel arbitration. Defendant Western Digital Technologies, Inc. (Western Digital) and defendant Employnet, Inc. (Employnet) were sued by a former employee, plaintiff Jester Jacob, for alleged Labor Code violations.  In his sole cause of action under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.),[1] plaintiff seeks civil penalties on behalf of himself and on behalf of current and former employees of defendants.

Defendants filed a motion to compel arbitration of plaintiff's "individual PAGA claim" based on a predispute arbitration agreement between the parties.  The trial court

_____

[1] All further statutory references are to the Labor Code unless otherwise indicated.

denied the motion, concluding that plaintiff's entire PAGA claim "must proceed in court under the [a]greement's own terms."

On appeal, defendant contends that the trial court erred in denying the motion to compel arbitration of plaintiff's individual PAGA claim. For reasons that we will explain, we will affirm the order denying arbitration.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Complaint*

In February 2022, plaintiff filed a complaint alleging a single cause of action against defendants for relief under PAGA. According to the complaint, plaintiff was a temporary employee who was assigned by defendant Employnet to work for defendant Western Digital. Defendants allegedly failed to pay all wages owed, failed to timely pay wages upon separation of employment, and failed to provide accurate wage statements as required by the Labor Code. Plaintiff seeks civil penalties on behalf of himself and on behalf of current and former employees of defendants.

### B. *Defendants' Motion to Compel Arbitration*

In September 2022, defendants filed a motion to compel arbitration of plaintiff's "individual PAGA claim."[2] In support of the motion, defendants provided a copy of the parties' arbitration agreement, which plaintiff signed in March 2021.

Section No. 1 of the arbitration agreement states that it is "governed by the Federal Arbitration Act." The agreement applies to "any dispute . . . arising out of or related to

---

[2] In their motion, defendants also sought dismissal of plaintiff's remaining "non-individual PAGA claim," that is, the "representative claim," for lack of standing. On appeal, defendants acknowledge that, based on *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*), the "representative portion" of plaintiff's PAGA claim may be stayed pending arbitration of plaintiff's individual claim, but not dismissed for lack of standing as they argued below.

2

[plaintiff's] temporary assignment" at Western Digital,[3] including statutory claims. The arbitration agreement "requires all disputes, except those expressly excluded in this Agreement, to be resolved only by an arbitrator through individual final and binding arbitration and not by way of court or jury trial."

Section No. 5 of the arbitration agreement contains a general waiver of representative claims and also refers to PAGA claims. This section states: "You and the Company agree to bring any dispute arising out of or related to your temporary assignment or separation therefrom in arbitration on an individual basis only, and not on a class, collective, joint, or representative basis (collectively referred to as 'Class Action Waiver'). The Company may lawfully seek enforcement of this Agreement and the Class Action Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. . . . You and the Company further explicitly agree that no arbitrator acting hereunder shall have the power to decide any class, collective or representative claims. The Parties agree that the Class Action Waiver shall be enforced to the fullest extent permitted by applicable law, but that any class, collective, and/or representative action deemed non-waivable shall be litigated in court, where such claims shall be stayed pending completion of arbitration of any arbitrable claims. Nothing herein shall be construed as an attempt to circumvent current legal precedent holding that certain claims brought under the Private Attorney General Act ('PAGA') are non-waivable; however, to the extent that the legal precedent changes, You and the Company reiterate your agreement to resolve all claims on an individual basis only, and not as part of a PAGA claim or in any other representative capacity and

---

[3] Defendant Western Digital, but not defendant Employnet, is expressly mentioned in the arbitration agreement. In the motion to compel arbitration, defendant Employnet contended that it could seek enforcement of the arbitration agreement because defendants were allegedly joint employers and the doctrine of equitable estoppel applied. Plaintiff in opposition to the motion did "not dispute that he entered into an arbitration agreement during his employment with [both defendants]."

expressly request that a court enforce this waiver to the maximum extent permitted by the law then in effect." (Bold omitted.)

Section No. 7 of the arbitration agreement provides that the arbitrator "may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement."

Section No. 8 of the arbitration agreement addresses enforcement and severability of the agreement. This section states in part, "In the event any portion of this Agreement is deemed unenforceable (other than the Class Action Waiver), the remainder of this Agreement will be enforceable. If the Class Action Waiver is deemed to be unenforceable for any reason, the Company and you agree that this Agreement is void in its entirety and that the parties may pursue their dispute(s) in a court of law."

### C. *Plaintiff's Opposition*

Plaintiff did not dispute that he entered into an enforceable arbitration agreement with defendants. He contended, however, that defendants' motion to compel arbitration should be denied. Plaintiff argued as follows: The arbitration agreement's class action waiver applied to his representative claim under PAGA. Such a waiver was legally prohibited, and consequently the class action waiver was unenforceable. The arbitration agreement itself provided that if the class action waiver was "unenforceable for any reason," then the arbitration agreement was "void in its entirety." Plaintiff thus contended that the arbitration agreement in this case was void.

### D. *Defendant's Reply in Support of the Motion to Compel Arbitration*

In reply, defendants contended that the class action waiver in the arbitration agreement was "not a wholesale waiver of the right to bring a PAGA claim." Rather, the arbitration agreement stated that the class action waiver "shall be enforced to the fullest

4

extent permitted by applicable law," which according to defendants meant that the waiver was "expressly limited by and tied to the law." Defendants argued that in "[a]pplying the law," the arbitration agreement required the trial court to compel plaintiff's "individual PAGA claim into arbitration and . . . allow the non-individual PAGA claim that is non-waivable to be 'litigated in court.' "

### E. *The Trial Court's Order*

A hearing was held on defendants' motion in December 2022, and on January 11, 2023, the trial court filed an order denying the motion. The court observed that under current law, "waivers of representative PAGA claims are invalid." The court reasoned that section No. 5 of the parties' arbitration agreement contained a waiver of representative actions (referred to as the class action waiver) but that that "waiver must fail under [current law]." The court observed that language in section Nos. 5 and 8 of the arbitration agreement provided that "non-waivable" representative actions "shall be litigated in court" and that the entire agreement was void if the class action waiver was unenforceable. The court determined that the parties' arbitration agreement "does not provide for partial enforcement of the representative action waiver, and makes no distinction between an 'individual' and a 'representative' PAGA claim in this regard." The court found the arbitration agreement's use of the phrases "representative action" and "representative claims" ambiguous, construed the phrases against the drafter, and determined that the arbitration agreement "means the arbitrator shall have no power to hear any portion of a representative PAGA action." The court further noted that the agreement's "direction to enforce the representative action 'waiver' to the maximum extent possible says nothing about *where* any portion of a PAGA claim that cannot be waived should proceed." The court concluded that because the "representative action waiver" was unenforceable under current law, plaintiff's "PAGA claims must proceed in court under the Agreement's own terms."

Defendants timely filed notices of appeal regarding the order.[4]

## III. DISCUSSION

We first set forth general legal principles regarding compelling arbitration and the standard of review. We then provide an overview of the law regarding the waiver of PAGA claims in employment arbitration agreements. With these legal principles in mind, we analyze defendants' contention that the trial court erred in refusing to compel arbitration of plaintiff's individual PAGA claim.

### A. *General Legal Principles Regarding Compelling Arbitration and Standard of Review*

The parties' arbitration agreement states that it "evidences a transaction involving interstate commerce" and that the agreement "is governed by the Federal Arbitration Act." Defendants below contended that the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) governs the parties' arbitration agreement, and plaintiff did not dispute that proposition.

Section 2 of the FAA provides in part that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) "This statute stands as 'a congressional declaration of a liberal federal policy favoring arbitration agreements . . . .' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 235 (*Pinnacle*).)

"[A]rbitration under the FAA 'is a matter of consent, not coercion.' [Citation.] Thus, ' "a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit." ' [Citations.] In determining the rights of parties to enforce an arbitration agreement within the FAA's scope, courts apply state contract law while

---

[4] Code of Civil Procedure section 1294, subdivision (a) provides that a party may appeal from an order denying a petition to compel arbitration.

6

giving due regard to the federal policy favoring arbitration. [Citations.]" (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.)

In California, " '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' [Citations.]" (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.) " ' " 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.]' " ' " (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27 (*TRB Investments*).) Generally, " '[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' [Citation.]" (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 503.) This "rule's effect, among other things, is to disfavor constructions of contractual provisions that would render other provisions surplusage. [Citation.]" (*Ibid.*)

" ' " 'The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.]' [Citations.]" ' " (*TRB Investments*, *supra*, 40 Cal.4th at p. 27.)

" ' "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.]" ' " (*TRB Investments*, *supra*, 40 Cal.4th at p. 27.) However, " '[t]he mere fact that a word or phrase . . . may have multiple meanings does not create an ambiguity.' [Citation.]" (*Yahoo Inc. v. National Union Fire Ins. Co. etc.* (2022) 14 Cal.5th 58, 69.) " ' "[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." [Citation.]' " (*TRB Investments*, *supra*, at p. 27.)

Under California and federal law, "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. [Citations.] Therefore, in the absence of indication of contrary intent, and where the arbitration clause is reasonably susceptible of

7

such an interpretation, [a particular claim] will be deemed subject to arbitration." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323, fn. omitted.)  At the same time, " '[t]he policy in favor of arbitration does not apply when the contract cannot be interpreted in favor of arbitration. There is no policy in favor of arbitrating a dispute the parties did not agree to arbitrate.' [Citation.]" (*Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 772, fn. omitted.)

In general, California's procedures for a petition to compel arbitration apply in California courts even if the arbitration agreement is governed by the FAA.  (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 908, 922 ["Although the arbitration agreement in the present case provides that the arbitration is to be governed by the FAA and not California law, generally the California Arbitration Act governs arbitral procedures brought in California courts"].)  Under California's procedures, the party seeking arbitration bears the burden of proving the existence of an arbitration agreement by the preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense.  (*Pinnacle*, *supra*, 55 Cal.4th at p. 236; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

"Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning.  [Citation.]" (*Avery v. Integrated Healthcare Holdings, Inc*. (2013) 218 Cal.App.4th 50, 60; see *Pinnacle*, *supra*, 55 Cal.4th at p. 236; *Oakland-Alameda County Coliseum Authority v. Golden State Warriors, LLC* (2020) 53 Cal.App.5th 807, 818–819; *Contreras v. Superior Court* (2021) 61 Cal.App.5th 461, 468.)

**B.  *PAGA Claims and Employment Arbitration Agreements***

PAGA was enacted "in response to widespread violations of the Labor Code and significant underenforcement of those laws.  [Citations.]" (*Adolph*, *supra*, 14 Cal.5th at

p. 1116.)  "PAGA authorizes 'an aggrieved employee,' acting as a proxy or agent of the state Labor and Workforce Development Agency (LWDA), to bring a civil action against an employer 'on behalf of himself or herself and other current or former employees' to recover civil penalties for Labor Code violations they have sustained.  [Citations.]"  (*Id.* at p. 1113; § 2699, former subd. (a).[5])  Relevant to this appeal, an aggrieved employee under PAGA was "(1) 'someone "who was employed by the alleged violator" ' and (2) ' "against whom one or more of the alleged violations was committed." ' [Citations.]" (*Adolph, supra,* at p. 1114; § 2699, former subd. (c).)

"[T]he civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations.  [Citation.]"  (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*).)  " 'A PAGA representative action is therefore a type of qui tam action,' conforming to all 'traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation.' [Citation.]" (*Ibid.*)

In 2014, the California Supreme Court in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) held that:  (1) a predispute "wholesale" or "categorical waiver" of the right to bring a PAGA claim in any forum is unenforceable; and (2) a "waiver of claims on behalf of other employees (i.e., non-individual [or representative] claims)" is also unenforceable.  (*Adolph, supra,* 14 Cal.5th at pp. 1114, 1117–1118; accord, *DeMarinis v. Heritage Bank of Commerce* (2023) 98 Cal.App.5th 776, 788–789 (*DeMarinis*).)

As we have just stated, a plaintiff may bring a PAGA claim "on behalf of himself or herself *and* other current or former employees."  (§ 2699, former subd. (a), italics

---

[5] Section 2699 was amended effective July 1, 2024.  (Stats. 2024, ch. 44, §§  1, 3.)  Those amendments do not apply to civil actions, such as plaintiff's action, that were filed before June 19, 2024.  (§ 2699, subd. (v)(1).)

added.)  The California Supreme Court in *Iskanian*, in prohibiting the waiver of PAGA claims on behalf of other employees (i.e., non-individual or representative PAGA claims) did not expressly determine " 'whether or not an individual claim is permissible under the PAGA.' " (*Adolph*, *supra*, 14 Cal.5th at p. 1118.)  Subsequently, some Courts of Appeal developed a third rule beyond *Iskanian* "that employers may not require employees to 'split' PAGA actions in a manner that puts individual and non-individual components of a PAGA claim into bifurcated proceedings," thereby refusing to enforce an agreement that requires the individual portion of a PAGA claim to be resolved in arbitration and the non-individual portion of the PAGA claim to be resolved in court.  (*Adolph*, *supra*, at p. 1118.)

In March 2021, the parties in this case executed their arbitration agreement.

In June 2022, the United States Supreme Court in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*) "left undisturbed" and "intact" both of *Iskanian*'s rules that (1) prohibited categorical waivers of the right to bring a PAGA action in any forum and (2) prohibited waivers of PAGA claims on behalf of other employees, i.e., non-individual or representative claims.  (*Adolph*, *supra*, 14 Cal.5th at pp. 1117–1118.)  However, the United States Supreme Court held that the third rule, which prohibited the " 'division of PAGA actions into individual and non-individual claims through an agreement to arbitrate' " was preempted by the FAA.  (*Id.* at p. 1118.) "The high court explained that an anti-splitting rule 'unduly circumscribes the freedom of parties to determine "the issues subject to arbitration" and "the rules by which they will arbitrate," [citation], and does so in a way that violates the fundamental principle that "arbitration is a matter of consent." ' (*Viking Ri*ver, at p. 659.)  Requiring parties to adjudicate a PAGA action entirely in one proceeding, the high court said, 'compels parties to either go along with an arbitration in which the range of issues under consideration is determined by coercion rather than consent, or else forgo arbitration altogether.  Either way, the parties are coerced into giving up a right they enjoy under

10

the FAA.' (*Viking River*, at p. 661.)  Thus, *Viking River* requires enforcement of agreements to arbitrate a PAGA plaintiff's individual claims if the agreement is covered by the FAA." (*Adolph*, *supra*, at pp. 1118–1119.)

Significantly, in reaching these conclusions, the United States Supreme Court in *Viking River* observed that the word "representative" has been used "in two distinct ways" to describe PAGA actions:  "In the first sense, PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State.  But PAGA claims are also called 'representative' when they are predicated on code violations sustained by other employees.  In the first sense, ' "*every* PAGA action is . . . representative" ' and '[t]here is no individual component to a PAGA action,' . . . *Iskanian*, [*supra*,] 59 Cal.4th, at 387, because every PAGA claim is asserted in a representative capacity.  But when the word 'representative' is used in the second way, it makes sense to distinguish 'individual' PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA claims arising out of events involving other employees.  For purposes of this opinion, we will use 'individual PAGA claim' to refer to claims based on code violations suffered by the plaintiff." (*Viking River, supra*, 596 U.S. at pp. 648–649.)

As more recently summarized by the California Supreme Court, the current state of the law regarding PAGA claims and arbitration is this:  An agreement that is covered by the FAA may require arbitration of "alleged Labor Code violations personally sustained by a PAGA plaintiff – so-called 'individual' claims." (*Adolph*, *supra*, 14 Cal.5th at p. 1114; see *id.* at p. 1119.)  " '[W]hen an appropriate arbitration agreement exists' " and "a plaintiff has filed a PAGA action comprised of individual and non-individual claims," the trial court must " 'bifurcate and order [the] individual PAGA claim[] to arbitration.' " (*Id.* at pp. 1126, 1123.)  In this circumstance, the "order compelling arbitration of [the] individual claim[] does not strip the plaintiff of standing

11

to litigate non-individual claims [i.e., claims on behalf of other employees] in court." (*Id.* at p. 1123; see *id.* at p. 1114.) Instead, " 'the individual PAGA claim[] in arbitration remain[s] part of the same lawsuit as the representative claims remaining in court.' " (*Id.* at p. 1126.) The plaintiff would thus be " 'pursuing a single PAGA action "on behalf of [himself or herself] and other current or former employees," albeit across two fora.' [Citation.]" (*Ibid.*)

After *Viking River* was decided by the United States Supreme Court, the hearing in the instant case on defendants' motion to compel arbitration was held in December 2022.

## C. *Analysis*

The trial court denied defendants' motion to compel arbitration of plaintiff's "individual PAGA claim" after concluding that plaintiff's entire PAGA claim "must proceed in court under the [arbitration a]greement's own terms." In this court, the parties dispute whether their arbitration agreement contains a valid carve-out regarding PAGA claims. Defendants contend that under the arbitration agreement, plaintiff's individual PAGA claim must be arbitrated while his non-individual (or representative) PAGA claim may be litigated in court. Plaintiff, on the other hand, contends that the arbitration agreement contains an illegal waiver of PAGA claims, that a " 'poison pill' non-severability provision" requires the entire arbitration agreement to be found void and unenforceable, and that therefore his entire PAGA claim may be litigated in court.

The relevant provisions of the parties' arbitration agreement may be summarized as follows:

First, the parties agreed in the arbitration agreement to "individual . . . arbitration" of "any dispute . . . arising out of or related to [plaintiff's] temporary assignment" at Western Digital, "except those expressly excluded in this Agreement." The remedies in arbitration are "limited to those that would be available to a party in his or her individual capacity."

12

Second, the "Class Action Waiver" in the arbitration agreement requires the waiver or dismissal of "class . . . or representative actions or claims," so that the arbitration is "on an individual basis only, and not on a class . . . or representative basis." Under the agreement, the parties "explicitly agree that no arbitrator acting hereunder shall have the power to decide any class, collective or representative claims." This "Class Action Waiver" of class or representative claims "shall be enforced to the fullest extent permitted by applicable law."

Third, to the extent a "representative action [is] deemed non-waivable," it "shall be litigated in court, where such claims shall be stayed pending completion of arbitration of any arbitrable claims."

Fourth, recognizing that "current legal precedent hold[s] that certain claims brought under the Private Attorney General Act ('PAGA') are non-waivable," the arbitration agreement provides that, "to the extent that the legal precedent changes," the parties "reiterate" their "agreement to resolve all claims on an individual basis only, and not as part of a PAGA claim or in any other representative capacity and expressly request that a court enforce this waiver to the maximum extent permitted by the law then in effect."

As these provisions reflect, the parties used the terms "individual" and "representative" in several places of the arbitration agreement. Courts have observed that these terms may have varied meanings. (See, e.g., *Viking River, supra*, 596 U.S. at p. 648.) In this case, the trial court and the parties reached different conclusions about whether, or to what extent, those varied meanings create ambiguity in the parties' arbitration agreement.

As we have set forth above, the word "representative" has been used "in two distinct ways" to describe PAGA actions. (*Viking River, supra*, 596 U.S. at p. 648.) First, "PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State." (*Ibid.*) In this regard,

13

" ' "*every* PAGA action is . . . representative" ' and '[t]here is no individual component to a PAGA action,' [citations], because every PAGA claim is asserted in a representative capacity." (*Ibid.*; accord, *Kim, supra*, 9 Cal.5th at p. 87.) Second, "PAGA claims are also called 'representative' when they are predicated on code violations sustained by other employees." (*Viking River, supra*, at p. 648.) In this regard, " 'individual' PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff," may be distinguished "from 'representative' . . . PAGA claims arising out of events involving other employees." (*Id.* at pp. 648–649; see *Adolph, supra*, 14 Cal.5th at p. 1114 [California Supreme Court "us[ing] the terms 'individual' and 'non-individual' claims in accordance with the high court's usage in *Viking River*" for "consistency"]; see *id.* at p. 1118.) A further distinction may be made regarding the term "individual." Specifically, a plaintiff bringing an " 'individual' PAGA claim[], which [is] premised on Labor Code violations actually sustained by the plaintiff" (*Viking River, supra*, at p. 648), may also or instead sue for "individual" Labor Code violations and seek statutory damages or penalties for himself or herself instead of the "distinct" relief provided by PAGA, which consists of "civil penalties a PAGA plaintiff may recover on the state's behalf." (*Kim, supra*, at p. 81.)

In this case, defendants sought to compel plaintiff to arbitrate his "individual PAGA claim under *Viking River*" while allowing the non-individual portion of his PAGA claim to remain in court (and stayed pending arbitration of the individual PAGA claim). In other words, if arbitration is compelled as requested by defendants, " 'the individual PAGA claim[] in arbitration [would] remain part of the same lawsuit as the representative claim[] remaining in court,' " with plaintiff " 'pursuing a single PAGA action "on behalf of [himself] and other current or former employees," albeit across two fora.' [Citation.]" (*Adolph, supra*, 14 Cal.5th at p. 1126.)

The parties' arbitration agreement, however, precludes plaintiff from pursuing a single PAGA action across two fora (judicial and arbitral). Regarding representative

claims, the arbitration agreement categorically prohibits arbitration of such claims. For example, among other provisions, the arbitration agreement expressly states in section No. 5 that "no arbitrator acting hereunder shall have the power to decide any class, collective or representative claims." At the same time, the arbitration agreement also prohibits the individual portion of a PAGA claim to be litigated in arbitration. In this regard, section No. 5 states, "Nothing herein shall be construed as an attempt to circumvent current legal precedent holding that certain claims brought under the Private Attorney General Act ('PAGA') are non-waivable; however, to the extent that the legal precedent changes, You and the Company *reiterate your agreement to resolve all claims on an individual basis only, and not as part of a PAGA claim or in any other representative capacity* and expressly request that a court enforce this waiver to the maximum extent permitted by the law then in effect." (Italics added.) This provision indicates that the phrase "on an individual basis only" – as well as similar phrases regarding "individual . . . arbitration" – in the arbitration agreement mean "not as part of a PAGA claim." In other words, the parties' arbitration agreement only provides for arbitration "*on an individual basis only, and not as part of a PAGA claim . . . .*" (Italics added.) For example, under the parties' arbitration agreement, plaintiff would be required to arbitrate an individual claim for damages under the Labor Code. However, where, as here, he alleges a PAGA claim and seeks civil penalties, the parties' arbitration agreement precludes arbitration – even on an individual basis as described in *Viking River* – because plaintiff's "individual" claim is "part of a PAGA claim" and the arbitration agreement only provides for arbitration "on an individual basis only, and not as part of a PAGA claim . . . ."

In sum, the parties' arbitration agreement in section No. 1 requires "individual . . . arbitration." Further, section No. 5 requires arbitration "on an individual basis only, and not as part of a PAGA claim"; the waiver of all "representative" claims or actions "to the fullest" or "maximum extent permitted by the law then in effect"; and "non-waivable"

15

claims or actions "shall be litigated in court." Because (1) the parties' arbitration agreement precludes arbitration of both the individual and representative portions of a PAGA claim, (2) a "categorical waiver" of the right to bring a PAGA claim in any forum is unenforceable (*Adolph*, *supra*, 14 Cal.5th at p. 1117; accord, *DeMarinis*, *supra*, 98 Cal.App.5th at pp. 788–789), and (3) the parties' agreement provides that claims that cannot be waived must be litigated in court, plaintiff's entire PAGA claim must proceed in court. The trial court therefore did not err in denying defendants' motion to compel arbitration of plaintiff's "individual PAGA claim."[6]

We are not persuaded by defendant's arguments that a different result is required. For example, defendants contend that "California courts have repeatedly held that agreements to arbitrate on an 'individual' basis encompass individual PAGA claims," citing *Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, *Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, and *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281.[7] However, none of the arbitration agreements in these cases included a provision, as in this case, stating that arbitration would be "on an individual basis only, and not as part of a PAGA claim." Because the parties' arbitration agreement in the

---

[6] In view of our determination that the parties' arbitration agreement is not ambiguous with respect to whether plaintiff's individual PAGA claim is subject to arbitration, we do not reach defendant's contention that the trial court erred in interpreting ambiguity in the arbitration agreement against the drafter.

[7] On the other hand, plaintiff cites various California cases for the proposition that even individual PAGA claims are representative claims. (See, e.g., *Gavriiloglou v. Prime Healthcare Management, Inc*. (2022) 83 Cal.App.5th 595, 601 [" 'All PAGA claims are "representative" actions in the sense that they are brought on the state's behalf' "]; *DeMarinis*, *supra*, 98 Cal.App.5th at p. 790 [ " ' " 'every PAGA action is . . . representative' " ' [citation], including individual PAGA claims, which, despite arising from Labor Code violations the plaintiff has personally sustained, are still asserted by the plaintiff as a proxy or agent of the state [citations]"].) As we have explained, the meaning of "individual" and "representative" depends on the context. In this case, the language of the parties' arbitration agreement, including that arbitration will be "on an individual basis only, and not as part of a PAGA claim," controls the construction we take in this case.

instant case expressly defines an arbitrable "individual" claim being "not as part of a PAGA claim," the express language of the parties' agreement compels the conclusion that their agreement to arbitrate individual claims does *not* encompass an individual PAGA claim.

Defendants' reliance on *Viking River* likewise does not advance their position. Defendants contend the United States Supreme Court in *Viking River* "held that the FAA preempts the rule of *Iskanian* insofar is it precludes the division of PAGA actions into individual and nonindividual claims through an agreement to arbitrate, and the [United States Supreme] Court compelled arbitration of the individual PAGA claim even though the agreement did not distinguish between individual and nonindividual PAGA claims." However, in this case, we are not applying a rule of law, preempted or not, that precludes the division of PAGA actions into individual and nonindividual claims. Instead, we are construing and applying the language of the parties' arbitration agreement, which itself expressly precludes arbitration of an individual PAGA claim. (*Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 615 [explaining that *Viking River* does not "prohibit parties from agreeing to exclude all PAGA claims, individual and nonindividual, from the scope of an arbitration agreement"]; see *Pinnacle*, *supra*, 55 Cal.4th at p. 236 ["arbitration under the FAA 'is a matter of consent, not coercion' " and "[t]hus, ' "a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit" ' "].)

Defendants further argue, citing *Viking River*, "that 'applicable law' (1) does not permit the wholesale waiver of PAGA claims, but (2) permits the division of a PAGA action into individual and nonindividual claims, and (3) requires enforcement of agreements to arbitrate the individual portion of the PAGA claim." Although we have no quarrel with defendants' first two points, defendants' third point requires qualification. As explained by the California Supreme Court, " '*Viking* [*River*] requires the trial court to bifurcate and order individual PAGA claims to arbitration *when an appropriate*

17

*arbitration agreement exists.' "* (*Adolph*, *supra*, 14 Cal.5th at p. 1126, italics added.) As we have explained, the parties' arbitration agreement in this case precludes arbitration of the individual portion of plaintiff's PAGA claim based on the language of the agreement stating that arbitration will be "*on an individual basis only, and not as part of a PAGA claim.*" (Italics added.) In addition, the arbitration agreement in *Viking River* contained a severability clause which provided "that if the [class and representative action] waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.' Based on this clause, [the employer] Viking was entitled to enforce the agreement insofar as it mandated arbitration of [former employee] Moriana's individual PAGA claim." (*Viking River*, *supra*, 596 U.S. at p. 662.) In contrast, the parties' arbitration agreement in this case states that "any class . . . and/or representative action deemed non-waivable shall be litigated in court."[8]

Accordingly, we conclude that the trial court did not err in denying defendants' motion to compel arbitration.

## IV. DISPOSITION

The order denying defendants' motion to compel arbitration is affirmed.

---

[8] We note that the parties' arbitration agreement in section No. 8 further provides that "[i]f the Class Action Waiver is deemed to be unenforceable for any reason, the Company and you agree that this Agreement is void in its entirety and that the parties may pursue their dispute(s) in a court of law." Because we have determined that other provisions of the agreement completely dispose of this appeal, we do not reach the issue of what circumstances would implicate this provision, or the proper construction of this provision, in section No. 8.

_____
BAMATTRE-MANOUKIAN, ACTING P. J.

WE CONCUR:

_____
DANNER, J.

_____
BROMBERG, J.

*Jacob v. Western Digital Technologies, Inc. et al.*
**H050775**